[L. A. No. 14523. In Bank.—April 18, 1935.]

In the Matter of the Estate and Guardianship of VOSLAVE VUCINICH et al., Minors. BOZO ANGELICH, Appellant, v. VLADIMIR VUCINICH, Guardian, etc., Respondent.

Henry E. Carter for Appellant.

Vladimir Vucinich, *in pro. per.,* Jennings & Belcher and Frank B. Belcher for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Second Appellate District, Division Two, in order that the question of the effect of approval and settlement of intermediate, current or annual accounts of a guardian might be considered in connection with the case of *Estate of Di Carlo,* L. A. No. 13937

(*ante*, p. 225 [44 Pac. (2d) 562]), involving the same question. In the Di Carlo case, we held that such accounts were not conclusive against the ward, but were subject to reexamination. The reasoning set forth in the opinion in *Estate of Di Carlo, supra,* is consequently applicable herein. (See, also, *Estate of Giambastiani,* 1 Cal. App. (2d) 639 [37 Pac. (2d) 142].) Accordingly, we adopt the following opinion of Mr. Justice *pro tem.* Willis in the instant case as the opinion of this court:

"This is an appeal by the former guardian of the estate of three minors from an order settling his final account. He was appointed guardian on June 9, 1920, and rendered his first account on October 5, 1927, which was settled without objections on November 1, 1927. Up to this latter date he had been authorized to expend the sum of $150 per month for the support of the minors, and on such date the court by order reduced that amount to $100 per month. In his first account he claimed credit for, and was allowed on settlement thereof the sum of $9,600 for support during the elapsed period. He was also allowed at this time $150 for attorney's fees. On August 25, 1932, he filed his second account, which, after objections heard, was approved and settled on January 20, 1933. In this account he claimed credit for, and was allowed for support of the minors, the sum of $2,550, covering the period from filing of first account in August, 1927, to September, 1929, and the additional sums of $606.11, cash advanced to, and of $1,200 for support of one of the minors, who had been returned to his personal custody, and the further sum of $1,185.70 for moneys advanced for the other two minors (who were during the period in Jugo-Slavia) from September 19, 1929, to July 29, 1932. By the order approving this second account the guardian was allowed the further sum of $350 for attorney's fees, and his compensation as guardian was fixed at the sum of $1,200. Also by this order he was surcharged the sum of $206.37 for overcharge for street assessments and taxes. In making its order settling this account the court therein did so 'without prejudice on final settlement to the said objections being re-presented'. The record herein fails to show any objections on file to this second account, but the order approving it recites that the minors had filed objections.

"On February 14, 1933, appellant filed his third and final account, which included only one new item, and to allowance thereof the minors filed certain objections in writing. At the hearing, over appellant's objection, evidence was received touching expenditures and items settled in the first and second accounts, and by the order of settlement certain changes and reductions were made therein. In addition, appellant was surcharged in the sum of $7,715.16 as and for cash belonging to the minors and which had come into his possession and not by him returned in his inventory or reports or accounted for. The items of $350 for attorney's fees and $1,200 for guardian's services were again allowed and settled. By this order the court allowed $3,000 in lieu of $9,600 in the first account, allowed the items of $606.11 and $1,200 in the second account and disallowed the items of $2,550 and $1,185 therein, thus reducing the total claims for support of the minors as allowed in the two previous accounts from $15,141.81 to $7,451.11, and adjudged that the difference between these two latter sums, to-wit, $7,690.70, be added to his charges together with the surcharge of $7,715.16, making a total of $15,405.86, to be added to the inventoried real estate liabilities of $24,000, making a total charge against the appellant of $39,405.86, less $256.04 deficit as shown in final account. From this was deducted the amount on hand in the form of inventoried and appraised real estate, to-wit, $24,000, leaving the sum of $15,149.82, in which amount the court found appellant was indebted to the estate and which the court ordered paid by appellant to his successor as guardian of the minors along with delivery of the real estate shown in the inventory and reports.

"From this order this appeal is prosecuted, appellant assigning as error (1) the disallowance of the $9,600 item for support as allowed in the first account, except as to $3,000 thereof; (2) the disallowance of items of $2,550 and $1,185.70, previously allowed in the second account; (3) the deduction of $1,500 from the total of bank remittance statements of $4,145; (4) in charging appellant with $7,715.16, cash not inventoried or accounted for; (5) in finding that appellant was indebted to the estate in the sum of $15,149.82; (6) in disallowing the first and second accounts as formerly settled; (7) in not giving credit for the sums of $585.30 and

$160, transmitted through the banks for support of said minors.

"In an orderly and logical process of consideration of the matters brought forward by this appeal we must first consider and determine point 6, which embodies the proposition that the court erred in reopening, over appellant's objection, and considering the first and second accounts and disallowing items thereof formerly allowed and settled, in turn reflected by specifications of error numbers 1 and 2 above.

■ "Unlike orders settling accounts of executors and administrators, when final, those settling guardians' accounts do not come within the rule of *res judicata*. The probate court is not precluded from a reexamination of former accounts rendered by a guardian of estates of minors, and on such reexamination it has power and authority to correct, revise or modify in amount any item or items of expenditure theretofore settled, allowed or approved by it, or to entirely disallow and withhold its approval or settlement of such item or items. Such is the rule first announced in this state in the case of *Guardianship of Cardwell*, 55 Cal. 137.

■ "Under this rule the authority or power of the probate court to disallow items in the first and second accounts at the hearing on the final account must be conceded; and as to those items the single remaining question relates to the sufficiency of the evidence to sustain the court's action. We have examined the transcript of evidence and proceedings given and had at the hearing and find therein ample support for the court's conclusions, except in two particulars reflected in the 3d and 7th specifications, hereinafter disposed of. It appears therefrom that from the date of his appointment on June 9, 1920, until November 1, 1927, the guardian was authorized to expend the sum of $150 per month for the support of the three minor children, which amount was reduced by the order of November 1, 1927, to the sum of $100. During all of this time, excepting for the first seven or eight months, the children were in the actual custody of their uncle, George Vucinich, in Jugo-Slavia, and from time to time appellant transmitted moneys to the latter for the support of the children. In his first and second accounts the guardian claimed credits for amounts

equalling· the result of multiplying months elapsed by $150 or $100, as the case might be, and presented voucher receipts purporting to cover each of such months. He admitted that these receipts were given to conform to the order of allowance and were not in truth related in point of time or amounts to the actual payments or transmittals of money. At the hearing on the final account the amount of those transmittals was inquired into, and as a result of the evidence adduced at the hearing the probate court disallowed the former item for support of $9,600 with its vouchers in the first account and allowed in lieu thereof the sum of $3,000, which had been delivered in cash to the uncle on his leaving for Europe, and disallowed the items of support of $2,250, with vouchers, and $1,185.70 in the second account, and allowed altogether as and for support over the entire period the sum of $7,451.11. The item of $1,185.70 appearing in the second account was claimed by appellant to have been sent to Jugo-Slavia in many small amounts for support of the minors from September 19, 1929, to December 18, 1930, and was supported by a voucher purporting to be signed by the widow of George Vucinich, the latter having died in 1932. The court found that this item was not supported by proper and authentic vouchers and that such expenditures were not made. This finding of the probate court we cannot here disturb, as the evidence relating thereto was conflicting; and the burden resting on appellant to support his claims with satisfactory vouchers, it was the exclusive province of the probate court to weigh the evidence and decide.

"In dealing with the claims of appellant for support money sent to Jugo-Slavia, both appellant and objectors introduced evidence as to the manner, dates and amounts of actual transmittals of money. The principal proof came from bank statements, which showed on their face the amounts transmitted by appellant. The court found that these aggregated the sum of $4,145, less the sum of $1,500 which the court found was a duplication. The evidence amply supports the finding that $4,145 comprised the whole amount sent by appellant through the two local banks to George Vucinich over the period of guardianship, but there does not appear in the record any evidence sufficient to support the finding that $1,500 thereof was a duplication of a

similar item. There was some evidence to the effect that George Vucinich, some time after he went to Jugo-Slavia in 1920, sent back to appellant a $1,500 draft which he had secured before leaving and had carried with him but had kept too long for negotiation, with a request that appellant have a new one substituted for it. This appellant did; and the objectors claim and the court found that that item of $1,500 constitutes part of the $4,145 of total bank transactions. The record of those transactions failed to show any similar item or group of items equivalent thereto and all the evidence given on the subject indicates clearly that this draft substitution took place in 1920, while the earliest local bank transmittal is dated May 15, 1925, and covers a period from that date to August 29, 1932.

■ ''The foregoing disposes of specifications numbered 1, 2, 3 and 6, and closely related thereto is specification number 7, concerning the disallowance by the court of credits for $585.30 and $160, transmitted by appellant to George Vucinich and supported by receipts of Slavonic Immigrant Bank of New York city bearing dates of June 29, 1921, and September 16, 1920, respectively. There was evidence in the form of a letter of appellant, dated December 1, 1920, to George Vucinich, showing that appellant was sending a draft at that time for $500 to be changed into dinars (a Jugo-Slavian monetary unit) for profit on expected rise in value. Appellant testified that the receipts were for moneys he sent George Vucinich for support of the minors. The record fails to reveal any substantial evidence in support of respondents' claim that these moneys, of entirely different amounts and sent at other dates, were sent on personal account for the purchase of dinars. In rejecting them the court erred.

■ ''This leaves for determination the 4th specification, relating to the surcharge of $7,714.16. Appellant's contention is twofold: First, that the evidence is insufficient to support the finding that that amount of cash came into his hands as guardian, and second, that the probate court was without jurisdiction to determine title thereto. The evidence is quite sufficient to sustain the finding that this amount of money was delivered by George Vucinich to appellant before the former left for Jugo-Slavia, and that it

was money which had come from the estate of the deceased father of these minors.

■ "The superior court sitting in probate has jurisdiction to determine as against an executor · the amount of money or property of the estate that has come into his hands, for the purpose of charging him therewith, and in determining that question to determine all issues necessarily incidental thereto. The power to determine as against the executor what money or other property belonging to the estate has come into his hands is implied in the power to settle his accounts and determine what remains in his hands to be distributed. (*Estate of Burdick*, 112 Cal. 387 [44 Pac. 734]; *Stevens* v. *Superior Court*, 155 Cal. 148 [99 Pac. 512].) This power, however, is limited, in cases where title thereto is in controversy, to those where the executor or other personal representative claims the property in his individual capacity. (*Estate of Kelpsch*, 203 Cal. 613 [265 Pac. 214]; *Bauer* v. *Bauer*, 201 Cal. 267 [256 Pac. 820]; *Estate of Roach*, 208 Cal. 394 [281 Pac. 607].) It is undoubtedly the rule that the superior court sitting in probate is without jurisdiction to try the question of title to property as between a representative of the estate and strangers to the estate. (*Ex parte Casey*, 71 Cal. 269 [12 Pac. 118]; *Estate of Haas*, 97 Cal. 232 [31 Pac. 893, 32 Pac. 327].) It will be readily noted from these citations that the line of demarcation between jurisdiction and nonjurisdiction of the probate court to determine what money or property, title to which is disputed, lelongs to the estate, is determined by the status of the claimant. If it is claimed by the executor in his individual capacity, the probate court has power to consider and determine the validity of that claim. But if claimed by or on behalf of a stranger to the estate, the probate court has no jurisdiction to determine the controversy. It appears obvious that the foregoing rules affecting proceedings on accounts of executors and administrators of estates of decedents also apply to those of guardians of estates of minors. This is made manifest by the terms of section 1606 of the Probate Code, wherein it is provided that 'when not otherwise specially prescribed in this division [Guardian and Ward], practice and procedure and the making and entry of orders under this division shall be governed by

the provisions of division III of this code [Administrator of Estate of Decedents] so far as they are applicable'.

■ ''To all rules, however, there arise exceptions to its literal application, by reason of some basic fact upon which the rule is founded being absent. Herein it appears that before the probate court is ousted of jurisdiction to determine what money or property belonging to the estate has come to the possession of the guardian it must appear that there exists in fact an actual and serious question as to whether the property belongs to the estate or some stranger thereto. In short, the claim if asserted by the guardian on behalf of a third person, must appear to be a *bona fide* claim, not one asserted and adopted by the guardian as a means to escape liability to account for such property. In the case of *Estate of Burdick, supra,* cited by respondents, the court said: 'Still, since the probate court has no jurisdiction to determine the rights of those claiming adversely to the estate, if serious questions upon such claims arise, the duty of the court might be to delay the final decree until such claims can be determined in another forum. Where there is in the hands of the executor money which the executor claims does not belong to the estate, he should himself take steps to test the right, if serious question exists; and if he is improperly charged, his remedy is to appeal from the decree settling his final account. I know of no other way in which it can be reached.' The effect of the foregoing decision respecting duty of the court upon ascertaining the seriousness of the claim, is considerably altered by the language of the court in the later case of *Estate of King,* 199 Cal. 113 [248 Pac. 519], wherein a stranger made claim to part of an estate at time of distribution. The court said: 'That the probate court has no jurisdiction to determine adverse claims to the properties of an estate in course of administration before it when asserted by a stranger to said estate has been fully determined in numerous decisions by this court. . . . This being so, the administratrix of said estate had cast upon her no duty to take any action whatever upon the asserted right of the appellant to have delivered over to her the properties of said estate, and it follows that her failure to take such action in no way impeded the right of said administratrix when

said estate was otherwise in a condition for distribution to present her petition for the distribution thereof.'

"At the hearing on appellant's final account, respondent, as new guardian of the minors, filed written objections thereto and sought to have the account surcharged with the amount of cash that George Vucinich had left with appellant and which the court later found to be in the sum of $7,715.16. At the close of the hearing the court was clearly justified in surcharging appellant's account. There was no proof of any claim to the money in question being asserted by George Vucinich in his lifetime and covering a period of twelve years from the time he left the money with appellant, nor any proof that his widow or heirs or any personal representative had ever asserted any claim thereto. The sole source of any such claim was the asseverations of appellant, which, in the light of his admissions by word of mouth and by letter, could not be reasonably deemed a serious claim or a claim of sufficient weight and verity to oust the jurisdiction of the probate court to determine whether this property belonged to the estate. If claims of such character as were made herein were adjudged sufficient to render the probate court powerless to decide them, the doors would be open to fraud to be practiced upon the beneficiaries of such estates. We think the lower court, sitting in probate, had power to determine the claim asserted by appellant and to surcharge his account.

"There is no merit in appellant's final contention that the pleadings herein are insufficient to put in issue the title to the surcharged moneys. No demurrer or objections to the form or substance of the written objections as filed were presented or urged at the trial, which proceeded on the theory that such an issue was before the court, and the point must be deemed waived by appellant (*Estate of Randall*, 188 Cal. 329 [205 Pac. 118]) and may not be raised for the first time on appeal (*Estate of Marre*, 127 Cal. 128 [59 Pac. 385]). Furthermore, the objection as filed clearly stated the contention of the objectors, and called to the court's attention a matter which it was under duty to carefully scrutinize and, as we have hereinabove decided, to determine by its order. This the lower court did, and its decision thereon finds ample support in the evidence."

· The court below is directed to credit the guardian's account with the sum of $2,245.31 in accordance with this opinion, and as so modified and corrected the order settling the account is affirmed without costs to appellant.