[L. A. No. 23447.   In Bank.   Oct. 28, 1955.]

Guardianship of the Person and Estate of DE WITT CLIN-
TON COOKINGHAM, an Incompetent Person. ELLA
MARIE ORMSBY, as Guardian etc., Appellant, v.
DE WITT CLINTON COOKINGHAM, Respondent.

Bailie, Turner, Lake & Sprague and Richard W. Sprague for Appellant.

Carl O. Kowol for Respondent.

EDMONDS, J.—In her seventh and final account, Ella Marie Ormsby, the guardian of the person and estate of De Witt Clinton Cookingham, took credit for the fees of an attorney and a psychiatrist. Her appeal is from the order disallowing the amounts claimed.

Cookingham was committed to Patton State Hospital in 1942, and Mrs. Ormsby, his daughter, was appointed guardian of his person and estate. He remained in Patton until October, 1953, when he received temporary leave. He was then 79 years old. Through his guardian *ad litem* and present attorney, he petitioned for a judicial determination of his restoration to capacity. Mrs. Ormsby contested the petition and through attorneys retained by her employed a psychiatrist to examine Cookingham. Without prior authorization from the court, she paid the psychiatrist a fee of $250 and agreed to pay her attorneys $750, principally for representing her in that proceeding.

Testimony tending to support the petition was presented by two experts produced by Cookingham and two others appointed by the court. The psychiatrist employed by Mrs. Ormsby gave testimony denying the alleged restoration to capacity. The court granted the petition and approved payment from the ward's estate of fees to the experts who testified in support of the incompetent.

In her final account, the guardian claimed the amounts of the fees of the psychiatrist and the attorneys employed by her. After a hearing, the trial court sustained the exceptions filed by the ward and surcharged the guardian for

the psychiatrist's fee and $625 of the amount paid to her attorneys.

It was found that the "guardian secured no prior approval of the Probate Court authorizing her to employ a psychiatrist to examine said ward, or to employ attorneys to oppose said petition [for restoration]; that petitioner as guardian owed no duty to the ward, or to the Court, to investigate the competency of the ward, or to oppose or take any other action in connection with such proceedings for restoration to capacity and for termination of guardianship; that the acts of employing a psychiatrist and attorneys were unauthorized and not a justifiable charge against the guardianship estate."

Mrs. Ormsby's position is that the trial judge erred in rejecting evidence that the expenses incurred were for the ward's best interest, that he ruled instead, as a matter of law, that compensation could not be allowed because the opposition to the petition for restoration was unsuccessful and undertaken without prior authorization by the court. Those grounds of themselves, the respondent replies, are a sufficient basis for the order disallowing the expenses, but in any event the record includes substantial evidence justifying a finding that the expenses were not incurred in the ward's best interests.

Section 1556 of the Probate Code provides that a guardian "shall be allowed the amount of his reasonable expenses incurred in the execution of his trust." ▆ The statutes do not specify the duties of the guardian, except that he must manage the estate "frugally and without waste, and apply the income, as far as may be necessary, to the comfortable and suitable support, maintenance and education of the ward and his family." (Prob. Code, § 1502.) ▆ In passing upon the propriety of expenditures, the court is governed by equitable considerations relating to the law of trusts. (Prob. Code, § 1400; *Estate of Clanton*, 171 Cal. 381, 387 [153 P. 459].)

▆ It is generally held that one who in good faith incurs expenses reasonably necessary to the support of a petition for restoration to capacity may recover those charges from the incompetent's estate (see cases cited in anno. 121 A.L.R. 1501), and California follows this rule. (*Stone* v. *Conkle*, 31 Cal.App.2d 348, 351 [88 P.2d 197]; *Estate of Doyle*, 126 Cal.App. 646, 648 [14 P.2d 920].) The Stone and Doyle cases treat such services as "necessaries" sufficient to support an

implied in law promise on the part of the incompetent to pay for them.

In no California case has the question of whether the expenses of an unsuccessful opposition to a petition for restoration may constitute "reasonable expenses incurred in the execution of" the guardian's duties been decided. *McClenahan* v. *Howard*, 50 Cal.App. 309 [195 P. 68], relied upon by Cookingham, decides only that the testimony of a psychiatrist concerning his observations of the asserted incompetent was not among the "necessaries" and "benefits" to such person which would imply a contract to pay for them. Other cases relied upon by Cookingham are not in point.

In other states, the few decisions discussing this question follow the leading case of *Palmer* v. *Palmer*, 38 N.H. 418, where the guardian was allowed his reasonable expenses incurred in a good faith opposition to an application for a termination of the guardianship. The court said: "The revocation of the guardianship in such cases is not to be made until the cause for which it is granted is removed. If this is a matter so obvious that no reasonable doubt can be entertained on the subject, it is the duty of the guardian to promote instead of resisting the revocation. But it is equally his duty, when the case is such as to admit of question, to present the facts fully to the judge. The interests of the ward, as well as sound reasons of public policy, require that the investigation should not be an *ex parte* one. The ward is not required or expected to produce evidence tending to show that the cause of guardianship is not removed. If the guardian should refrain from opposition for the reason that he apprehends the result may possibly show that the cause is removed, and he thereby be exposed to loss of the expenses incurred, the consequence will be that in many cases the revocation will be made upon unsatisfactory evidence, and when possibly the interests of the ward require that the guardianship should continue unrevoked. When the guardian proceeds in good faith, and in the exercise of a sound discretion, to try a doubtful question, the recovery of his reasonable expenses incurred in trying it should not be made to depend upon the result." (P. 420; *American Nat. Bank* v. *Bradford*, (Tenn.App.) 188 S.W.2d 971, 980; *cf. In re Larner*, 39 Misc. 377 [79 N.Y.S. 836, 838].)

The reasoning of the Palmer case is persuasive. ▉ The guardian could not assume merely from his ward's discharge and subsequent petition for restoration that he was capable

of taking care of himself. (*Estate of Kay*, 30 Cal.2d 215, 225 [181 P.2d 1, 171 A.L.R. 667].) To discourage the guardian's inquiry as to the ward's status, in effect, would allow the petition for restoration to be considered without the presentation of all of the facts. ▉ But the purpose of the law is to protect a ward from being ''deceived or imposed upon by artful or designing persons'' (Prob. Code, § 1460), and courts must scrupulously protect the rights of persons whose competency is in question.

It is contended, however, that even if the guardian in the exercise of his duties may make unsuccessful opposition to a petition for restoration to capacity, he may not be compensated from the ward's estate for expenditures in connection with such opposition without prior authorization by the court. A variation of this contention is that the guardian may protect himself from the possibility of being made personally liable for such expenditures by a petition for instructions under section 1516 of the Probate Code but, failing to do so, he opposes the petition for restoration at the peril of being personally liable if the opposition is unsuccessful.

In states other than California, it appears to be the rule that, except for necessaries furnished a ward, the guardian may not be compensated from the ward's estate for expenditures made without authorization of the court. (See cases collected in 130 A.L.R. 113.) ▉ In *Estate of Clanton*, 171 Cal. 381 [153 P. 459], it was said: ''Under our liberal system, if the expenditures of the guardian have been just and equitable, they will be allowed regardless of the obtaining or failure to secure orders of the court authorizing them. 'The criterion for determining whether a past maintenance should be allowed is whether a chancery court would have authorized it in advance.' (Citation.) . . . We are bound to hold that the expenditures for which the guardian was given credit were equitable and just charges against the estate of the incompetent, because the findings of the court were in favor of the account, and there is no contention that the findings are not supported by the evidence. The court did not err in making allowance for expenditures made without previous authority.'' (P. 387.)

Cookingham seeks to distinguish the Clanton case and decisions following it, upon the ground that they concerned expenditures which generally are held to be necessaries. (*Estate of Schluter*, 209 Cal. 286, 289-290 [286 P. 1008] [support and maintenance of ward]; *Guardianship of Ewing*,

42 Cal.App.2d 629, 630 [109 P.2d 748] [personal needs of the incompetent].) He relies upon *Guardianship of Stallings,* 85 Cal.App.2d 443 [193 P.2d 114], in which the court considered the charge for an expenditure not made for a necessity. There it was said: "Some of the items which were disallowed might possibly have been authorized by the court if application therefor had been made preceding the expenditure. An order authorizing expenditures for reasonable amounts and for justifiable purposes would have protected the guardian. Since he did not procure the orders he must be responsible for those the court has disallowed. He is in the position of any other fiduciary who acts without the previous authorization of the court—his obligations are not chargeable to the estate of the beneficiary." (Pp. 447-448.)

There is no compelling reason for requiring a guardian personally to bear the cost of an unsuccessful opposition to his ward's application for restoration, conducted in good faith, merely because he failed to obtain prior authorization. Indeed, it may be extremely difficult for the guardian to determine the position he should take without professional advice at the commencement of the proceeding. If it is conducted in good faith, the guardian should be allowed the reasonable expenses incurred in the opposition. If not in good faith, the expense, of course, should not be allowed. But there is ample opportunity to determine that question when the guardian's account is presented for approval. To the extent that it indicates a holding contrary to these conclusions, *Guardianship of Stallings, supra,* is disapproved.

Cookingham contends that the Clanton line of decisions no longer is controlling. He relies upon the 1951 amendment to section 1556 of the Probate Code, as construed by this court in *Clark* v. *State Bar,* 39 Cal.2d 161 [246 P.2d 1], in which it was pointed out that, "[a]s amended section 1556 is substantially similar to Probate Code, section 904, providing for allowance of commissions to executors and administrators. Under section 904 an executor or administrator is not entitled to his commissions until after court approval." (P. 171, footnote 5.)

The point of inquiry of the Clark case was whether an attorney who, as guardian, had withdrawn from his ward's estate funds for his own compensation, without authorization, was guilty of unethical practice. The sections referred to by the court require that the court authorize the *compensation* claimed by the guardian or personal representative, but they

do not state that prior authorization of the *services* or *expenditures* for which compensation is claimed is necessary for it to be allowed. On the contrary, both sections contemplate that the services and expenditures be completed before the claim for compensation. (§ 904 ["services rendered up to that time"]; § 1556 ["reasonable expenses incurr*e*d in the execution of his trust"].) And section 1556 specifies that the compensation shall be such as "the court in which his accounts are settled deems just and reasonable."

Sections 1500-1540 of the Probate Code, in chapters dealing with "Powers and Duties" of guardians (ch. 7, div. 4) and "Sales, Mortgages, Leases and Conveyances" by guardians (ch. 8, div. 4), include provisions specifically requiring authorization by the court of certain activities by the guardian. (*Cf.* §§ 1500, 1501, 1506, 1509, 1515, 1530a, 1532, 1533, 1534, 1534a, 1537, 1538, 1538.5.) Section 1509, relied upon by Cookingham, provides that "[a] contract for attorney's fees for services in litigation, made by or on behalf of a minor, is void unless the contract is approved by the court in which the litigation is pending or the court having jurisdiction of the estate of the minor, upon petition of any person in interest. When no such contract is approved, and a judgment is recovered by or on behalf of a minor, the attorney's fees chargeable against the minor shall be fixed by the court rendering the judgment." It is urged by Cookingham that because of this section lack of authorization by the court of the contract between Mrs. Ormsby and her attorney barred her right to an allowance for the attorney's fee.

Section 1509, however, deals with an entirely different problem. █ It is generally true that a guardian is without power to bind his ward's estate to a contract unless he is authorized to do so by statute or order of the court. Without such authorization, the liability of the guardian is personal with the right to be reimbursed from the ward's estate for the expenditure, if it is proper. (25 Am.Jur. 64, Guardian and Ward, § 98.) █ For that reason, in California a contract by the guardian for the services of an attorney is not enforceable against the ward's estate unless compliance is had with this section. (*Hunt* v. *Maldonado.* 89 Cal. 636, 637 [27 P. 56]; *Morse* v. *Hinckley,* 124 Cal. 154. 158 [56 P. 896]; *McKee* v. *Hunt,* 142 Cal. 526, 527-528 [77 P. 1103].) █ On the other hand, section 1556 expressly allows the guardian, at any time after the filing of the inventory and appraisement, to "petition the court for an order

fixing and allowing his compensation for services rendered to that time and for an order fixing and allowing compensation to his attorney for services rendered to the guardian.'' The allowance is charged against the estate of the ward.

The burden is upon the guardian to justify the items in his account. (*Guardianship of Vucinich*, 3 Cal.2d 235, 241 [44 P.2d 567] ; *cf. Estate of McLaughlin*, 43 Cal.2d 462, 465 [274 P.2d 868].) Mrs. Ormsby asserts that she is entitled to the presumption that in opposing her ward's restoration she acted in good faith, and, furthermore, the trial judge refused to consider evidence offered by her upon that issue. Cookingham takes the position that there is a sufficient factual basis in the record for a finding that the opposition was not made in good faith.

The record fully supports the position of Mrs. Ormsby that the trial judge declined to consider the question of her good faith in opposing the petition for restoration. The proceedings in the hearing on the guardian's account were conducted with extreme informality in the matter of taking evidence, the positions of counsel being presented almost exclusively by their opening statements and argument to the court. Although counsel for Mrs. Ormsby offered to prove the worth of his services, the offer at most only indirectly touched upon the matter of good faith. However, the remarks of the trial judge plainly indicated his belief that good faith was immaterial in the absence of a prior order expressly authorizing the guardian to oppose restoration. Such litigation, said Judge Clarke, the guardian ''engages in at her peril. If she had been successful, I think there is no question in this case that she would have been allowed the costs of her attorney and the costs of the psychiatrist. She was unsuccessful. She did not ask the court prior to this litigation if she might employ and pay doctors, if she might employ and pay an attorney, but she proceeded to do so without giving the court the opportunity to determine whether she wanted or needed such assistance.'' And, the ruling rejecting the offer of proof was made with this statement: ''I am still of the opinion that I should refuse compensation for the reasons I have indicated.'' Upon this record, an offer of proof would have been superfluous. (*Cf. Estate of Kearns*, 36 Cal.2d 531, 537 [225 P.2d 218] ; *Heimann* v. *City of Los Angeles*, 30 Cal.2d 746, 757 [185 P.2d 597] ; *Lawless* v. *Calaway*, 24 Cal.2d 81, 91 [147 P.2d 604].)

Cookingham maintains, however, that any refusal to re-

ceive evidence upon the question of good faith was not prejudicial. There is a sufficient factual basis in the record, he asserts, for a finding that the opposition was not made in good faith. The facts to which he refers are included in the reports of a probation officer made upon his investigation of the circumstances in connection with Cookingham's release from the state hospital. Cookingham argues that it must be presumed that such evidence was considered. (*Cf. Ward Mfg. Co.* v. *Miley*, 131 Cal.App.2d 603, 608-609 [281 P.2d 343].)

Even if it be assumed that the trial judge considered the probation officer's reports, there is no finding which reasonably may be construed as stating his determination of that issue. The court declared that the fees of the psychiatrist and attorneys incurred by the guardian were "not a justifiable charge against the guardianship estate." But this finding is preceded by others which state that the "guardian secured no prior approval of the Probate Court authorizing her" to do so and that she "as guardian owed no duty to the ward, or to the Court, to investigate the competency of the ward." Rather than presenting a determination of the issue of good faith, these findings follow the views of the trial judge, as stated by him throughout the hearing on the account, that the element of good faith is immaterial.

The order is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.