[49 C.2d 3; 314 P.2d 10]

[L. A. No. 24405. In Bank. Aug. 6, 1957.]

JOSEPH SCHECTER, Petitioner, v. SUPERIOR COURT
OF LOS ANGELES COUNTY, Respondent; CITIZENS
NATIONAL TRUST AND SAVINGS BANK OF LOS
ANGELES et al., Real Parties in Interest.

George I. Devor and Irving M. Walker for Petitioner.

Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Assistant County Counsel, for Respondent.

Frank W. Doherty, Anderson, McPharlin & Conners and William J. Conners for Real Parties in Interest.

SHENK, J.—Petitioner, Joseph Schecter, an attorney, seeks the writ of prohibition to restrain the Los Angeles Superior Court, sitting in probate, from examining him on the subject of funds which came into his possession and claimed to have been improperly disbursed by him as attorney for the guardian of an incompetent. An alternative writ was issued.

Mills Meredith and Lola Meredith are now and were at all

times herein mentioned husband and wife. Prior to August 22, 1954, Mills left his home in Kentucky and came to California where he obtained employment. On that date Lola was en route from Kentucky to join her husband. While travelling in Illinois as a passenger on a train operated by the Atchison, Topeka and Santa Fe Railway Company Lola sustained permanent injuries causing her later on to become mentally incompetent.

During a period when Lola was not deemed incompetent an action was commenced in the Superior Court in Los Angeles County by Lola and Mills in which it was alleged that Lola's injuries were the result of the negligence of the railroad company. Thereafter her attorney of record in that action, not the petitioner here, filed in the respondent court sitting in probate, a petition for the appointment of Mills as guardian of the person and estate of his wife. He was duly appointed and qualified as such. On the day of his appointment an amended complaint was filed in the personal injury action, alleging the incompetency of Lola, continuing Mills as a plaintiff individually and substituting him as guardian of Lola. While that action was pending, and after the appointment of the guardian, the petitioner was substituted as the attorney for Mills in both his individual and guardianship capacities. Mills entered into a contingent fee contract with the petitioner whereby the latter was to receive for his services 40 per cent of any amount recovered. Court approval was neither sought nor obtained for the execution of that contract.

At the close of the trial and while the jury was deliberating in the personal injury action a settlement was obtained pursuant to which a judgment was entered in favor of Lola by and through her guardian Mills in the sum of $110,000, and in favor of Mills personally in the sum of $15,000. Mills petitioned for and obtained an order from the respondent court sitting in probate authorizing him as guardian to execute and deliver a satisfaction of the judgment as to Lola. The railway company paid that portion of the judgment by issuing a check in the sum of $110,000 payable to Mills as guardian and to his attorney, the petitioner. The draft was endorsed by Mills and the petitioner and the proceeds deposited in the petitioner's "Client's Trust Account."

Various disbursements were made by the petitioner at Mills' direction from the trust account. No court approval was sought or obtained for any of the disbursements. Ac-

cording to the petitioner's "Report and Account of Guardian Filed by His Attorney of Record," the $110,000 was disbursed substantially as follows: $61,951 to various attorneys as fees for services in connection with the litigation, including $29,000 to the petitioner, and $28,632 to the attorney for whom the petitioner was substituted; $8,233 to Mills for a number of purposes, some of which would appear not to have been for the care of Lola; $11,602 to certain persons especially for the care and maintenance of Lola and members of her family, including Mills; $7,631 for medical and other expenses paid to hospitals, institutions and doctors; $1,425 directly to Lola; $5,854 paid out as "expenses," most of which related to legal fees and costs in connection with the prosecution of the personal injury action and the guardianship matter, and $14,987 to Mills as guardian which amount he deposited in a guardianship account.

The foregoing disbursements total $111,673, $1,673 in excess of the amount of the judgment. The discrepancy is due, according to the petitioner, to an inadvertent overpayment in that amount to the guardian. According to the petitioner's accounting $96,686 was disbursed from his "Client's Trust Account" leaving a balance of $13,314 which was properly transferable to the guardianship account. Since the guardianship account was established on October 18, 1955, Mills has withdrawn an additional $1,538.37 for items entitled "hospitalization," "maintenance" or "reimbursement" of expenses for "incompetent."

On March 15, 1956, the mother of the incompetent wife filed a petition in the respondent court, alleging that Mills had failed to perform his duties as guardian and had abused his trust. She prayed that Mills be removed and that the Citizens National Trust and Saving Bank of Los Angeles be appointed in his place and stead as guardian of Lola's estate. Mills failed to appear in response to an order to show cause why his letters should not be revoked and submitted his written resignation as guardian. On April 6, 1956, the respondent court revoked the letters issued to Mills and appointed the bank as guardian.

Thereafter, in response to petitions filed by the bank as the new guardian and by the United Pacific Insurance Company as surety for Mills, the respondent court issued a citation directing the petitioner to appear and show cause why he should not be examined on the subject of property in his possession belonging to the estate of Lola. The petitions

alleged that except for $14,987.22 transferred to the guardianship account, the petitioner had embezzled, converted to his own use, concealed or fraudulently disposed of the assets of Lola's estate. (See Prob. Code, §§ 613, 614, 615 and 1552.) In response to the order to show cause the petitioner filed the account hereinbefore referred to, purporting to do so on behalf of Mills and stating therein, on information and belief, that Mills had "absconded" from the state. (See Prob. Code, § 1552.) When the matter came on for hearing the petitioner appeared and moved to dismiss the citation on the grounds that it failed to state a cause of action against him; that he was a stranger to the guardianship estate, and that the respondent court was without jurisdiction to hear and determine a controversy between the representative of a guardianship estate and a stranger thereto. Before further proceedings could be had the present petition was filed in which the petitioner seeks to prohibit the respondent court from hearing and determining the matters involved in the citation on the ground that the court, sitting in probate, is without jurisdiction to proceed.

 The superior court sitting in probate has only such jurisdiction as is conferred upon it in accordance with the provisions of the Constitution. (See art. VI, § 5.) An ng the powers thus conferred are those which relate to the administration of the estates of decedents. (Prob. Code, § 300; *Schlyen v. Schlyen*, 43 Cal.2d 361, 369-370 [273 P.2d 897].) The limitations upon the exercise of those powers in the determination of property rights has been extensively explored in this state. It has been held that the jurisdiction of the superior court while acting in its probate capacity does not extend to the determination of controversies involving title to property as between the legal representatives or those acting in behalf of the estate and strangers to the estate. (*Central Bank v. Superior Court*, 45 Cal.2d 10 [285 P.2d 906]; *Schlyen v. Schlyen, supra,* 43 Cal.2d 361; *Estate of Dabney,* 37 Cal.2d 672 [234 P.2d 962].) In the Central Bank case the court set forth the two instances in which the essential "privity" with the estate existed such as would confer jurisdiction on the court sitting in probate to determine the controversy. Privity was held to arise in the first instance "out of the nature of the relationship existing between the parties to the controversy." The relationship was confined to that occupied by executors and administrators and "those purporting to assert a personal right derived through the execu-

tor's or administrator's official capacity" including the claims of attorneys of representatives of estates into whose hands property of the estate had come, citing *Estate of Troy,* 92 Cal. App. 352 [268 P. 426], and *Estate of DeBarry,* 43 Cal.App.2d 715 [111 P.2d 728]. It was held that privity could also be predicated upon claims to property "acquired by the claimant in the course of probate proceedings," again citing the Troy and DeBerry cases.

The petitioner relies upon *Tomsky* v. *Superior Court* (1901), 131 Cal. 620 [63 P. 1020], wherein it was held that the superior court sitting in probate could not require an attorney to restore to an estate a fee paid to him by the guardian thereof where a court order for payment of the fee had not been obtained. In that case the court stated that the mere fact that the petitioner was "an attorney of the court and an officer thereof," did not make him amenable to jurisdiction of the court sitting in probate. The petitioner here claims that he likewise is not in privity or subject to the jurisdiction of the respondent court sitting in probate. But here the petitioner's privity with the estate is based upon the fact, if such a determination is made, that he has, through the guardianship proceedings, come into possession of a fund which he purported to receive and hold in trust for his client, the guardian therein. The fund was received as guardianship property and not as his earnings. The circumstances are similar to those in both the Troy and DeBarry cases. In distinguishing the Tomsky case and in referring to the money paid to the attorney in that case the court in the DeBarry case stated that what the attorney "had received was not paid to him as a trust fund or by order of the court for a certain purpose. It had not been embezzled or fraudulently taken." The allegations of the petitions in the present case state a cause clearly distinguishable from the Tomsky case.

 Special jurisdiction in matters of the guardianship of the person and estate of incompetents has been conferred on the superior court sitting in probate and in a proper case an attorney representing the guardian of the estate of an incompetent should be governed by the same rules with reference to accountability to the court for the disbursement of funds of the incompetent as apply to counsel for the personal representative of the estate of a decedent. (Prob. Code, § 1552; see *Central Bank* v. *Superior Court, supra,* 45 Cal. 2d 10, 14.)

10

The crucial question in this proceeding is the extent, if at all, to which the fund involved must be administered and controlled through the guardianship proceeding. The solution of that question requires a determination of whether the fund is the separate property of Lola or the community property of Mills and Lola. ■ If the $110,000 recovered as damages for Lola's personal injuries constituted her separate property it would appear to be beyond question that the management and control thereof exercised by Mills would be in his capacity as her guardian and that he, and his attorney acting in his behalf, would be accountable to the respondent court sitting in probate for the proper disbursement of the fund. On the other hand if the fund constituted the community property of the spouses its management and control would be governed by the law relating to community property.

■ It is provided in section 8 of article XX of the Constitution that all property "owned by either husband or wife, before marriage, and that acquired by either of them afterwards by gift, devise, or descent, shall be their separate property." All other property is community property. (Civ. Code, §§ 164, 687.) ■ In *Zaragosa* v. *Craven* (1949), 33 Cal.2d 315 [202 P.2d 73, 6 A.L.R.2d 461], it was held that it is "the law of this state that the cause of action for personal injuries suffered by either spouse during marriage . . . as well as any recovery therefor, constitutes community property. . . ." (See also *Flores* v. *Brown* (1952), 39 Cal.2d 622 [248 P.2d 922].) In the Zaragosa case the fund was acquired in California while the parties were domiciled here. The question of the character of property acquired as compensation for the personal injuries suffered out of state by one spouse while domiciled in California presented itself in *Darnold* v. *Voges,* 143 Cal.App.2d 230 [300 P.2d 255]. ■ It was there stated at page 251 that "marital property rights in personalty or choses in action acquired by a spouse are determined under the laws of the domicile of the acquiring spouse." The foregoing is a proper statement of the preferred rule (see *Shilkret* v. *Helvering* (1943), 138 F.2d 925 [78 App. D.C. 178] ; 41 C.J.S. 719 ; 11 Am.Jur. 376 ; §§ 208, 290, Rest., Conflict of Laws), and we recognize it as the law of this state. (See also *Dow* v. *Gould & Curry S. M. Co.,* 31 Cal. 629, 630, 652.) In the present case the question of the domicile of the spouses at the time the fund was acquired is undetermined. If they were domiciled in Kentucky at that

time it would seem that the fund was Lola's separate property (§§ 404.010, 404.020, 404.060, Kentucky Revised Statutes [1954]), and subject to control by Mills only in his capacity as guardian. If the parties were domiciled in California at that time, as the petitioner contends, the fund was and is community property and its disposition must be governed by the community property laws of this state.

 Where community property is involved it is the general rule that the husband has management and control of the personalty to the same extent, with certain exceptions not here involved, as in the case of his separate property. (Civ. Code, §§ 161a, 172.) In such case he could, subject to certain statutory limitations, properly manage the entire community fund in his capacity as husband regardless of whether he was also the guardian of his incompetent wife, and he could do so without the approval of or the requirement that he account to the court having jurisdiction of the guardianship matter.

 Contentions by the present guardian that the contract for contingent fees is void in its entirety for lack of court approval, that a guardian cannot authorize the payment of attorney fees without court approval (see *Guardianship of Cookingham,* 45 Cal.2d 367, 374 [289 P.2d 16]), and that a guardian cannot delegate his powers to distribute a guardianship fund (see *Gaver* v. *Early,* 191 Cal. 123 [215 P. 394]) have application only as against a guardian and not as against a husband who apart from guardianship proceedings has been authorized to exercise management and control over a community fund.

 However, the husband's power of control over the community fund has been limited. After the decision in the Zaragosa case the Legislature in 1951 enacted section 171c of the Civil Code. (Stats. 1951, p. 2860.) That section provides that money damages received in behalf of the wife for her personal injuries continues to be community property but that the wife is vested with the control thereof, except that the husband "shall have management, control, and disposition of such money damages to the extent necessary to pay for the expenses incurred by reason of the wife's personal injuries."

 In view of the foregoing it follows that Mills, as Lola's husband, had a limited right to control and manage the fund here involved separate and apart from the authority conferred upon him as guardian of his wife's estate if the fund was community property. Whether it was depends upon factual determinations of domicile which have not been re-

solved and are not possible of solution on the present record. If it be determined that the parties were domiciled in California at the time the fund was acquired and that the fund was community property an additional question is presented and that is as to what extent the sums paid out of the "Client's Trust Account" by the petitioner at Mills' direction were in fact "expenses incurred by reason of the wife's personal injuries." It appears from documents filed herein that most but not necessarily all of the disbursements might be so classified. In any event it cannot be said as a matter of law that the fund in the present case is one the control of which might properly be exercised free and clear of the guardianship proceedings.

The petitions filed by the present guardian and by the surety of the former guardian and the return submitted in response to the citation raise issues as to the protection and preservation of the fund which are clearly within the scope of inquiry by the respondent court sitting in probate pursuant to section 613, 614, 615 and 1552 of the Probate Code.

When the jurisdiction of the court depends on a determination of facts it is within the power of the court in the first instance to determine those facts and when supported by substantial evidence its findings may not be disturbed. (*Palermo Land & Water Co.* v. *Railroad Com.*, 173 Cal. 380 [160 P. 228].)

On the record presented in the present case it is concluded that the court sitting in probate has jurisdiction to determine the domicile of the spouses at the time the fund was acquired and the character of the fund thus acquired; that the respondent court, so functioning, may retain and exercise that jurisdiction as to the full amount thereof if it determines the fund to be Lola's separate property. If it determines that the fund was and is community property the court may determine what portion of the fund was expended as "necessary to pay for expenses incurred by reason of the wife's personal injuries," order an accounting, and charge the petitioner and his client Mills accordingly.

The alternative writ is discharged and the peremptory writ is denied.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.