[Civ. No. 33276.   Second Dist., Div. One.   Dec. 30, 1968.]

Guardianship of the Persons and Estates of CHRISTIAN JOSEPH HEXBERG et al., Minors. CATHERINE R. BORCHARD, Petitioner and Respondent, v. CHRISTIAN JOSEPH HEXBERG et al., Objectors and Appellants.

Sweeney, Cozy & Foye, Sweeney, Cozy & Diederich, Thomas P. Foye and Daniel B. Diederich for Objector and Appellant Christian Joseph Hexberg.

No appearance for Objector and Appellant corporate guardian.

Thomas Lisle Schechter for Petitioner and Respondent.

LILLIE, J.—Objections to four guardianship accounts (two pertaining to Christian's estate and two to the estate of his sister Victoria) were overruled by the trial court which also awarded fees to the guardian's accountant. This appeal is from those portions of the judgment, encompassing some 11 pages, itemizing the above; other portions awarding fees to court-appointed and other accountants are not challenged.

There are 31 pages of findings (including conclusions of law) in support of the overall decision (except for an item amounting to $306.83 [not reported and surcharged to the guardian]) that the several objections to each accounting are without merit. ▮▮▮ The sole basis of this appeal appears to be that the evidence does not sustain the findings. The same rule governs here as in any other appeal, namely, that findings reached after the receipt of conflicting evidence are not subject to appellate interference if they are supported by the record. (*In re Forthmann,* 118 Cal.App. 332, 338 [5 P.2d 472].) As in *Guardianship of O'Connor,* 37 Cal.App.2d 63, 65 [98 P.2d 769], "The argument of counsel is simply a discussion of reasons why the testimony of some of respondent's witnesses should not be believed. It cannot be disputed that. if this evidence is taken as true, it is sufficient to support the findings and order." Examined in the light of the foregoing rules, and for reasons hereinafter set forth, those portions of

the judgment from which this appeal is taken must be affirmed.

Both minors are the children of Jessie Hexberg who died testate in 1954; his estate was subsequently distributed to Mae Ramelli Hexberg, the minors' mother. She also died testate in 1957 leaving her entire estate to her children. Her sisters, Mattie Ramelli and Catherine Ramelli Borchard were named, and in due time qualified as executrices. Both children having taken up residence with Mattie upon their mother's death, letters of guardianship involving each minor were issued to her in November of 1957. In July of 1958 her first account current in each guardianship was duly approved. In September 1961 her second account current was filed and subsequently approved; referred to therein is a going business in Los Angeles County known as Hexberg Lumber Company acquired from Mae's estate upon final distribution thereof. (Previously, in August of 1957, both Mattie and Catherine as Mae's executrices had been directed to continue the operation of that business.) In March of 1964 Mattie died; later that month her sister Catherine became successor guardian of the two estates. In January of 1965, as executrix of Mattie's estate, Catherine filed a third and final account in Christian's estate and asked for Mattie's discharge. In July of 1963 Christian had attained majority. At the same time Catherine filed a third and current account in Victoria's estate. Finally, in July of 1965, a fourth and final account (Christian) and a fourth and current account (Victoria) were filed. Prior to the filing of the last account, Christian filed objections to Mattie's third account; although no written objections appear to have been filed to other accounts, upon the hearing the trial court considered all accountings, even those previously settled by court decree, predicated on the rule that such accounts are not conclusive against the ward and may be reexamined. (See *Estate of Joslin,* 165 Cal.App.2d 330, 339-340 [332 P.2d 151].)

The trial court filed a lengthy memorandum of opinion; appellant[1] agrees with the conclusion therein reached that the several issues litigated may properly be reduced to four: (1) Whether the guardian should be removed; (2) whether the guardian and her predecessor should be surcharged for improper expenditures and inaccurate accounting; (3)

---

[1]Although the notice of appeal recites that both Christian and his sister's corporate guardian ''appeal'' from portions of the judgment therein designated, only Christian has filed a brief.

whether the wards have an equitable interest in property located at Solimar Beach; and (4) the fixing of fees for accountants. Since appellant further agrees with the trial court's determination that (1), *supra*, has become moot with the appointment of a new guardian for Victoria, we first discuss the claim of improper expenditures and inaccurate accounting.

■ Certain expenditures are said to be improper because court approval therefor was not first obtained; the items consist of a piano, three violins and a horse—all apparently purchased for Victoria. Cited by appellant is *Guardianship of Cookingham*, 45 Cal.2d 367 [289 P.2d 16], but that case does not support the contention presently advanced. Thus, quoting from *Estate of Clanton*, 171 Cal. 381 [153 P. 459], it is declared in *Cookingham* (p. 372) : " 'Under our liberal system, if the expenditures of the guardian have been just and equitable, they will be allowed regardless of the obtaining or failure to secure orders of the court authorizing them.' " Evidence, both oral and documentary, was received and the court thereafter made findings that the instant expenditures were made for the benefit of the ward and were reasonable and just. Appellant does not specifically challenge such findings; rather it is asserted, in another portion of his brief, that the evidence does not support the findings but without a fair statement of all material evidence relating thereto. This court is not obliged to consider contentions thus presented. (*Kruckow* v. *Lesser*, 111 Cal.App.2d 198, 200 [244 P.2d 19].)

■ It is next argued that certain "professional fees" paid to Catherine were neither proper charges nor were they accounted for. As noted by the court in its memorandum of opinion, and otherwise brought out during the proceedings below, such fees were perhaps incorrectly designated—a more proper designation might have been management fees because of services rendered the Hexberg Lumber Company. While Catherine received a total of $42,296 in such fees, the sum of $12,975 was received while the above company was an asset of Mae's estate; the fee in question having been allowed by the probate court, it is not now contended that the matter of such compensation is not res judicata. (*Carr* v. *Bank of America etc., Assn.*, 11 Cal.2d 366, 371 [79 P.2d 1096, 116 A.L.R. 1282].) After August 8, 1960, the lumber company was an asset of each of the guardianships. While she was guardian, and before her death, Mattie employed Catherine as its manager; upon Mattie's death, Catherine undertook both respon-

sibilities. The evidence fully supports the trial court's finding that these so-called professional fees paid Catherine were accounted for and not concealed. Specifically, the court found that the above fees were set forth either in the lumber company's statement of income and expense or in its profit and loss statements. True, such statements do not show Catherine as the recipient of such fees, but there was expert testimony that good accounting practice does not require that that be done. ■■■ Nor is there merit to the additional claim that the above fees were excessive. In its memorandum of opinion the court observed that standing alone they ''might perhaps be said to be high, [but] when one takes into account the responsibilities involved, the time, effort, and the energy expended by her in seeing that this business was properly run, with financial success, none of the charges strike me as being in the least unfair to the wards, or unjust or improper on the part of the guardians.'' An appropriate finding to the above effect having been made, it is simply useless for appellant to argue at this stage of the proceedings that the court should have found otherwise.

■■ The same conclusion must be reached with respect to other expenditures by the guardian of which appellant complains. They consist of checks listed as ''advertising account'' and ''auto account'' which were charged to the lumber company; additionally, Christmas presents in the form of cash were given to the company's employees. While, in the final analysis, these expenditures were for the benefit of the business, they also benefited the wards inasmuch as the company was the principal asset of the guardianship and, in the view of the trial court ''is still a good, going, profitable one.''

■■ The next point (3), *supra,* relates to the wards' asserted equitable interest in the Solimar Beach property as to which the court held adversely. It appears that this property, consisting of a house, belonged to Mattie Ramelli; that Mattie took $10,000 ($5,000 from each guardianship) and had the place remodeled; that thereafter the wards took up residence there, remaining some 96 months. The second account current made reference to the above sum as being for ''shelter'' and the account was subsequently approved. Upon reexamination of that account in the instant proceeding (*Estate. of Joslin, supra,* 165 Cal.App.2d 330), the trial court found that the expenditure for shelter was a fair and proper charge. Two courts having found to the above effect, we cannot say

that their determinations may not be supported upon any rational hypothesis.

 Finally, as to fees, the trial court clearly had authority to order payment, out of the guardianship, of the fees of respondent's accountant (*Guardianship of Cookingham, supra*) just as it had authority to order similar payment of accountant's fees to Mr. Rausch, who reviewed the books of Hexberg Lumber Company.  No appeal was taken from the Rausch portion of the judgment, and the notice of appeal likewise specifically exempts from coverage another portion awarding fees to court-appointed accounting experts referred to by appellant as "referees." Thus, having clearly elected not to challenge the award of referee's fees, appellant may not now ask this court to review the propriety thereof. (See *Hansen* v. *Hansen*, 233 Cal.App.2d 575, 580-581 [43 Cal.Rptr. 729].)

The portions of the judgment appealed from are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 23, 1969, and the petition of appellant Hexberg for a hearing by the Supreme Court was denied February 26, 1969.