[Civ. No. 9606. Third Dist. May 11, 1959.]

Estate of MARY ELLEN FOSTER, Deceased. L. S. (LUKE) FOSTER, Appellant, v. LOVUS B. FOSTER et al., Respondents.

Cushing, Cullinan, Duniway & Gorrill and Hugh W. Killebrew, Jr., for Appellant.

Sherman C. Wilke and Wilke, Fleury & Sapunor for Respondents.

WARNE, J. pro tem.*—This is an appeal from an order denying a motion for change of venue, and overruling appellant's objections to the jurisdiction of the trial court.

The deceased, Mary Ellen Foster, died at a convalescent home in Sacramento at the age of 81 years. Two of her sons, the respondents herein, offered for probate in the county of Sacramento her last will and testament, wherein they were named as coexecutors. Another son, the appellant, opposed the petition for probate and made a motion for change of venue to the county of Yolo on the ground that at the time of decedent's death she was a resident of that county. (Prob. Code, § 301.) It is uncontradicted that for many years prior to June, 1957, the decedent had been a resident and a taxpayer of the county of Yolo, although she maintained two inactive savings accounts in banks in Sacramento. In May or June, 1957, decedent suffered a heart attack and as the result thereof was confined in a hospital located in Woodland, Yolo County, known as the Woodland Clinic, for treatment. During her treatment at the Woodland Clinic, she told her son, L. B. Foster, one of the respondents herein, that she would no longer be able to take care of herself or live alone in her home at Woodland and requested that she live with him at his home in Sacramento. Her request was granted and she was taken to her son's home in Sacramento, where she stayed until January 3, 1958, when she entered Sutter Hospital in Sacramento. Thereafter she was placed in a convalescent home in Sacramento, where she remained until the time of her death. Up to the time of her death decedent was registered as a voter in Yolo County, although it does not appear that she voted at any

---

*Assigned by Chairman of Judicial Council.

election in Yolo County after coming to Sacramento; she also maintained her checking account in a bank in Woodland and made no disposition of her home in that city. Her tax bills were sent to her Woodland home, and there is no evidence of a notification of change of address having been given to the tax collector or various firms and persons with whom she transacted business, such as her insurance agent, the Pacific Gas and Electric Company, or the Woodland branch of the American Trust Company. However, the affidavit of L. B. Foster, one of the respondents, shows that after decedent came to stay with him she expressed the wish to employ a practical nurse to care for her in Woodland; but after inquiries were made as to the cost, she determined it would be too expensive and stated she knew she would never be able to return to Woodland and requested that he rent or sell her home in that city. This testimony was corroborated by affidavits of employees in his home. Although there was evidence to the contrary, the trial court resolved the conflict by finding that the decedent was a resident of the county of Sacramento at the time of her death and that jurisdiction vested in the superior court in and for the county of Sacramento for the probating of said estate. Hence appellant's motion to transfer the estate proceedings to Yolo County was denied, and his objections to jurisdiction were overruled.

■ The issue before the trial court was one of fact, namely, in which of two counties (Sacramento or Yolo) was decedent a resident at the time of her death, and as stated in *Benjamin* v. *Benjamin*, 128 Cal.App.2d 367, 370 [275 P.2d 43], ''Where there is a conflict in the inferences to be drawn from the evidence they must be resolved in favor of the trial court's order (*Blumer* v. *Kirkman Corp.*, 38 Cal.2d 480, 484 [241 P.2d 17]). The question is not whether the evidence is conclusive but whether there is in the record such evidence as will sustain the order.''

Section 244 of the Government Code provides in part that in determining a person's place of residence, among the rules to be observed are:

''(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose.

. . . . . . . . . . . . .

''(g) The residence can be changed only by the union of act and intent. . . .''

■ Since residence can be changed only by the union of

act and intent, the question arises whether there is in the record evidence sufficient to justify the conclusion arrived at by the trial court that defendant intended to change and make her residence in the county of Sacramento and that her conduct was illustrative of such intention. Viewing the evidence in the light most favorable to the respondents, as we must, the evidence is ample to sustain the trial court's findings. Here we have the decedent stating to her son, while in the Woodland Clinic, that she would no longer be able to take care of herself or live in the Woodland house; her request that she live with her son in Sacramento; her removal to Sacramento where she remained until the time of her death; and her request, made to her son, that her Woodland home be sold or rented. Also the averments in the affidavit of one Irene Moore, that during the period from June, 1957, to and including January, 1958, she was employed from time to time by L. B. Foster as a housekeeper and cook; that she became acquainted with decedent and upon three or more occasions during said period of time decedent stated to her that she was very happy and content living with her son in Sacramento and that she did not desire or intend to return to Woodland to live in her home in said city; and further that decedent stated to her that she would never return to live in Woodland because she did not desire to live alone and she no longer desired to ever return to live in Woodland. There is also an affidavit by one Ilo Reynolds, containing the following averments: "That during the period from June, 1957, to and including January, 1958, she was employed, from time to time, by L. B. Foster as a baby sitter; that during the course of her said employment, she was frequently in the home of said L. B. Foster . . .; that during the aforesaid period of time, she became acquainted with MARY ELLEN FOSTER [decedent] . . .; that upon many of the occasions she was in and about the home of said L. B. FOSTER, as aforesaid, she carried on conversations with said decedent; that upon several occasions, during which she was baby sitting with the minor child of said L. B. FOSTER at his said home, MARY ELLEN FOSTER told her that she did not wish to return to Woodland to live in the house that she owned in Woodland; that she told affiant upon these occasions that she was very happy in living with her son and her daughter-in-law at their home in Sacramento, California, and that she realized it would be impossible for her to ever again live alone because of her physical infirmities; that upon one of such occasions said decedent stated to affiant that she had asked L. B. FOSTER, her son,

to consider selling her home at 810 Cross Street, in Woodland, California, because she did not intend to go back to Woodland to live; that during the aforesaid period of time said decedent received many letters through the mail addressed to decedent at said 3202 H Street, Sacramento, California.''

This evidence amply supports a conclusion of a union of act and intent upon the part of the decedent to make Sacramento her residence and fully justifies the court's finding that Sacramento became decedent's residence.

When jurisdiction is supported by substantial evidence, the finding of the trial court will not be disturbed. (*Schecter v. Superior Court,* 49 Cal.2d 3 [314 P.2d 10].)

The order denying the motion for change of venue and overruling appellant's objections to jurisdiction of the trial court is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.