TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-110 |
| of | : | |
| | : | April 11, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

LUIS PATLAN ("relator") has requested this office to grant leave to sue ARCADIO VIVEROS ("defendant") in quo warranto pursuant to section 803 of the Code of Civil Procedure to test defendant's right to hold the office of Mayor of the City of Parlier.

CONCLUSION

Leave to sue in quo warranto is granted to test defendant's right to hold the office of mayor, where the city council appointed defendant to the office after declaring it vacant on the basis that the incumbent was no longer a resident of the city.

ISSUES OF LAW OR FACT

Does the elective office of mayor of a general law city become vacant if the incumbent assumes a new residence outside of the city limits? If so, was relator no longer a legal resident of Parlier when the city council declared his office vacant and appointed defendant?

STATEMENT OF FACTS

Relator was elected Mayor of Parlier in November of 1994. At that time he resided in Parlier. In April of 1995, he closed escrow on a house in the City of Clovis. Relator's loan application for the Clovis house required him to agree to occupy, establish, and use the property as his principal residence within 60 days after execution of the deed of trust and to continue to occupy the property as his principal residence for at least one year after the date of occupancy.

Relator declares that at all times relevant to this matter he was a resident of Parlier and that he has resided in that city on a continuous basis since taking office. He states that he has always considered Parlier to be his place of residence. Following the close of escrow on his Clovis house in April of 1995, relator was advised that he might not be able to continue to be the Mayor of Parlier if he moved his residence to Clovis. He therefore did not move out of his Parlier residence. He is a registered voter in Parlier, receives the bulk of his mail there, and has not changed his address with the Department of Motor Vehicles. He has not filed for a homeowner's property tax exemption on the Clovis house and is seeking to sell the property.

At a special meeting of the city council held on October 4, 1995, a motion to declare vacant the office of mayor was passed by a 3-2 vote, based primarily upon relator's purchase of the Clovis house and the lending requirements pertaining thereto. At a regular meeting of the council on October 12, 1995, the decision declaring the office of mayor vacant was affirmed and relator was removed therefrom. At a special meeting on October 18, 1995, the council appointed defendant to fill the vacancy.

## CRITERIA FOR QUO WARRANTO

Section 803 of the Code of Civil Procedure provides that an action in the nature of quo warranto "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office. . . ." In determining whether to grant leave to sue upon the complaint of a private party, this office addresses three fundamental questions: (1) whether quo warranto is the proper remedy to resolve the issues presented; (2) whether the proposed relator has raised a substantial question of law or fact; and (3) whether it would be in the public interest to grant leave to sue. (73 Ops.Cal.Atty.Gen. 197, 200 (1990); 72 Ops.Cal.Atty.Gen. 15, 20 (1989).)

## ANALYSIS

1.      The Remedy of Quo Warranto

Applications for leave to sue in quo warranto normally involve a direct challenge to the right of a person to hold public office, usually on the ground that he or she has failed to meet the required qualifications for the particular office, such as a residency requirement. (73 Ops.Cal.Atty.Gen., *supra*, at 200.) Here, the challenge is somewhat different in that it does not concern the qualifications of defendant, but rather those of the relator. Was relator subject to an ongoing residency requirement in holding the office of Mayor of Parlier, and if so, did he fail to maintain his status as a legal resident of the city?

In 73 Ops.Cal.Atty.Gen. 197, *supra*, we determined that a quo warranto action was the proper remedy under circumstances parallel to those presented here. There a school personnel commissioner was removed from office by a school board for failing to maintain his residence within the school district. We granted leave to sue, since the current commissioner's title to the office was dependent upon the legitimacy of the board's prior determination that the office had become vacant.

Our analysis relied primarily on the case of *Klose* v. *Superior Court* (1950) 96 Cal.App.2d 913. In *Klose*, the court stated:

> ". . . where [an] appointing power considers a vacancy in office to exist, it may appoint a successor, without proceedings to declare the vacancy to exist, and that when it does so appoint[,] the official succeeded may by quo warranto question whether there was any vacancy." (*Id*., at p. 917.)

On October 19, 1995, relator filed a petition for a writ of mandate in superior court, seeking his reinstatement to the office of mayor. On December 27, 1995, the court sustained defendant's demurrer "on the ground that the proper remedy is a proceeding in quo warranto."

We conclude that a quo warranto action is the proper remedy to determine whether defendant is lawfully holding the office of Mayor of Parlier.

2.      Substantial Issues of Law or Fact

a.      Continuing Residency Requirement

Parlier is a general law city with a city manager form of government and an elective mayor. Government Code section 34904[1] specifies the eligibility requirements for election to the office of mayor in such a city:

> "A person is not eligible to hold office as mayor unless he or she is at the time of assuming that office an elector of the city, and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 10227 of the Elections Code."

Section 34903 states that an elective "mayor is a member of the city council and has all of the powers and duties of a member of the city council." The eligibility requirements for becoming a councilmember in a general law city with a city manager are contained in section 34882:

> "A person is not eligible to hold office as a member of a municipal legislative body unless he or she is otherwise qualified, resides in the district and both resided in the geographical area making up the district from which he or she is elected and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 10227 of the Elections Code."

With respect to cities in general, subdivision (a) of section 36502 states:

> "A person is not eligible to hold office as councilmember, city clerk, or city treasurer unless he or she is at the time of assuming the office an elector of the city, and

---

[1]All references hereafter to the Government Code are by section number only.

was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 10227 of the Elections Code.

"If during his or her term of office, he or she moves his or her place of residence outside of the city limits or ceases to be an elector of the city, his or her office shall immediately become vacant."

Additionally, section 1770, subdivision (e) provides:

"An office becomes vacant on the happening of any of the following events before the expiration of the term:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e)  His or her ceasing to be an inhabitant of the state, or if the office be local *and one for which local residence is required by law*, of the district, county, or city for which the officer was chosen or appointed, or within which the duties of his or her office are required to be discharged. . . ."  (Italics added.)

Here, it may be argued that we do not have an office "for which local residence is required by law."  Under the express terms of section 34904, eligibility to hold the elective office of mayor is measured by the person's electoral or voting status at two discrete points in time.  In contrast, other statutes dealing with eligibility requirements for local public officials have been viewed as imposing ongoing residency requirements only when they incorporate some form of the term "resident."  (See 73 Ops.Cal.Atty.Gen., *supra*, at 203-206).

However, even if section 34904 does not contain an implied continuing residency requirement, the more general provisions of sections 34882 and 36502 may still require adherence to their terms in these circumstances.  While a specific statute controls a general statute when the two are in conflict (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420), "statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible"  (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387).  Under this latter principle of statutory construction, relator may be subject to the requirements of sections 34882, 34904, and 36502 which are applicable to all councilmembers.

In any event, whether an elected mayor of a general law city is subject to a continuing residency requirement presents a substantial question of law for a court to resolve.

b.        Change of Legal Residence

Assuming relator is subject to a continuing residency requirement, we are faced with a mixed question of law and fact with respect to whether he has changed his residence to Clovis.  Still within the context of whether a vacancy has occurred, the questions become (1) by what legal standard is an officeholder's place of legal residence to be determined and (2) has relator met that standard as

regards residency in Parlier. We find that this inquiry also constitutes a substantial question of law and fact which justifies granting leave to sue in quo warranto.

The term "residence" as used in subdivision (e) of section 1770 has not been defined by the Legislature. However, section 244 states:

"In determining the place of residence the following rules shall be observed:

"(a)     It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.

"(b)     There can only be one residence.

"(c)     A residence cannot be lost until another is gained.

"(d)     The residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child.

"(e)     The residence of an unmarried minor who has a parent living cannot be changed by his or her own act.

"(f)     The residence can be changed only by the union of act and intent.

"(g)     A married person shall have the right to retain his or her legal residence in the State of California notwithstanding the legal residence or domicile of his or her spouse."

The Supreme Court has ruled that the term "residence" as used in section 244 means "legal residence" or "domicile." (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 7; *Smith* v. *Smith* (1955) 45 Cal.2d 235, 239; see also *Fenton* v. *Board of Directors* (1984) 156 Cal.App.3d 1107, 1113; 72 Ops.Cal.Atty.Gen. 8, 11 (1989).) The test for determining a person's domicile is physical presence coupled with an intention to make that place his or her permanent home. (*Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d at 116.) To ensure that everyone has a domicile at any given time, the Legislature has adopted the rule that a domicile is not lost until a new one is acquired. (§ 244, subd. (c); *Walters* v. *Weed*, *supra*, 45 Cal.3d at 7.) Stated otherwise, a domicile, once acquired, continues until it is shown that a new domicile has been acquired. (*DiMiglio* v. *Machore* (1992) 4 Cal.App.4th 1260, 1268.)

In 72 Ops.Cal.Atty.Gen. 8, *supra*, we examined a situation where a city mayor purchased a home approximately 38 miles outside the city limits and filed a homeowner's property tax exemption for the new residence. He moved a mobile home to his property located within the city, where he spent one to three nights each week. In determining that the mayor had not changed his legal residency by such conduct, we stated:

". . . While the question of domicile is a mixed question of law and fact [citation], many factors enter into the equation, including where an individual is

registered to vote and his or her address for mail [citation], where tax returns are filed [citation], where an automobile is registered [citation], and where a homeowner's exemption or renter's credit is taken [citation]. However, the critical element is that of intent. While declarations of intent are significant, they are not determinative. The acts must be examined as well. [Citation.]" (*Id*., at p. 14.)

Here, there is evidence that relator had, at one time, intended to change his legal residence to Clovis. However, the question remains whether there ever existed a physical presence in Clovis coupled with relator's intent to make that place his permanent home. Residence can be changed only by a union of act and intent. (*In re Foster's Estate* (1959) 170 Cal.App.2d 314, 316-317.) Relator has exhibited a pattern of activity which is consistent with holding a "dual residence." A dual residence would not preclude a determination that he has retained his "domicile" or "legal residence" in Parlier. (See 75 Ops.Cal.Atty.Gen. 287, 289 (1992); 72 Ops.Cal.Atty.Gen. 63, 70 (1989); 72 Ops.Cal. Atty.Gen., *supra*, at 23.)

The circumstances presented by relator are similar to those considered in 73 Ops.Cal.Atty.Gen. 197, *supra*, where we observed:

"The factual issues bearing on where Mr. Pallan was and is domiciled are thus conflicting. As to them, in considering the Application `it is not the province of the Attorney General to pass upon the issue . . . or to indicate whether the proposed plaintiff or defendant should, in his opinion, prevail, but rather . . . to determine whether there exists a state of facts or questions of law that should be determined by a court in an action in Quo Warranto.' [Citations.] In our opinions last year, and ones before then [citation], when the issue of domicile was raised and the facts presented were similarly conflicting and equivocal toward establishing the domicile of the proposed defendant, we viewed that as being insufficient to grant leave to sue in quo warranto, and denied the Applications accordingly. [Citations.] *But those opinions did not involve a challenge by the former office holder questioning the correctness of his appointing power's having considered a vacancy to exist in his position and having filled it.* As discussed, Mr. Pallan has a right to be heard in court on that issue. [Citations.] We thus believe that a substantial mixed issue of fact and law regarding Mr. Pallan's domicile is presented which should be resolved by a court and justifies granting leave to sue." (*Id*., at pp. 210-211; italics added.)

3. The Public Interest

Finally, not only must a substantial question of law or fact be presented for this office to grant leave to sue, it must be in the public interest to have the matter decided by a court. In the instant matter, the central question turns on the eligibility of relator to hold the office of mayor, which he occupied prior to his ouster by the city council.

In determining whether the public interest would be served by granting this application for leave to sue, we are mindful of the principles expressed in *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418:

"We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in *People* v. *Washington*, 36 Cal. 658, 662, our Supreme Court declared that `[t]he elective franchise and the right to hold public offices constitute the principal political rights of citizens of the several States.' In *Carter* v. *Com. on Qualifications etc*., 14 Cal.2d 179, 182 [93 P.2d 140], the court pointed out: `[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . *The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office*. . . .' (Italics added.)"

We also find that relator's ouster, having occurred relatively early in his four-year term of office, may be rectified by a court proceeding (if appropriate) prior to the expiration of the term (see 76 Ops.Cal.Atty.Gen. 254, 262 (1993)), and more importantly, that an elected incumbent is normally entitled to a judicial hearing prior to a conclusive determination of a vacancy in his or her office (73 Ops.Cal.Atty.Gen., *supra*, at 212; see 75 Ops.Cal.Atty.Gen., *supra*, at 290). Lastly, the resolution of the legal issue of whether an elective city mayor must reside within the city for his or her entire term of office is important not only to relator and the citizens of Parlier, but to elective mayors and their respective constituencies throughout the state. (See 73 Ops.Cal.Atty.Gen., *supra*, at 212.)

Accordingly we believe the public interest would be served by granting the application for leave to sue.

* * * * *