## F. Hugh Niklason, et al.

### v.

## Marshall Ramsey, et al.

Record No. 840262

March 6, 1987

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ.

*Harry Lee Thomas (Thomas and Williams*, on brief), for appellants.

*Edward D. Hubacher* for appellees.

THOMAS, J., delivered the opinion of the Court.

In this creditors' rights suit we are called upon to decide whether the actions of F. Hugh Niklason with regard to his mother's estate prevented him, pursuant to the provisions of Code § 64.1-194, from disclaiming an interest therein. This matter was referred to a commissioner in chancery who held that Hugh could not disclaim his interest in his mother's estate. The commissioner's report was confirmed by the trial court. The result was a holding that Hugh's creditors could satisfy their claims out of the assets that would have come to Hugh had he not disclaimed. We think the trial court correctly decided this case and, therefore, we will affirm its judgment.

In January 1971, Marshall Ramsey and William Boardman obtained separate judgments against Hugh. One judgment was in the amount of $29,066.64 with interest at 5% per annum from October 3, 1967, until paid and with attorneys fees of $4,359.99. The other judgment was for $9,000.00 with interest at 5% per annum from October 3, 1967, until paid and with attorneys fees of $1,350.00. Ramsey and Boardman tried unsuccessfully for several years to collect these judgments. On March 30, 1982, they filed the present suit.

On August 13, 1979, Hugh's mother, Ellowene D. Niklason executed a will. At the time the will was executed, Ellowene's family consisted of her two sons, Hugh and Don D. Niklason, and seven grandchildren, four by Hugh and three by Don. The evidence established that she had expressed the desire that her seven grandchildren share equally in her estate. Ellowene died July 4, 1981. Her will was probated on July 6, 1981. The will did not divide her estate equally among her grandchildren. Instead, it gave virtually all of her estate to one of her grandchildren, Scott F. Niklason, Hugh's son.

On July 10, 1981, Ellowene's other son, Don, appealed the probate order. He challenged the paper writing on two grounds. First, he contended that at the time the August 1979 paper was executed his mother lacked testamentary capacity. Second, he contended that the paper writing was the result of undue influence exerted upon his mother. Don's suit was placed on the docket as a fiduciary proceeding.

The fiduciary proceeding — of which Ramsey and Boardman were unaware and in which they played no part — never came to trial. The parties settled that dispute. The commissioner found as a fact, and the trial court confirmed the finding, that all the parties to the fiduciary suit, including Hugh, entered into a contract as to the method of dividing Ellowene's estate. This contract provided that the will of Ellowene D. Niklason was invalid. This contract was entered into prior to any disclaimer being made by Hugh.

On January 28, 1982, two things occurred in the fiduciary suit. Hugh signed a disclaimer and then the trial court entered the consent decree which embodied the agreement previously reached by all the parties. The consent decree read in part as follows: "ADJUDGED, ORDERED and DECREED that the paper writing dated August 13, 1979 is not the Last Will and Testament of Ellowene D. Niklason . . . ." The consent decree went on to provide the method by which the estate was to be divided among the seven grandchildren of Ellowene Niklason.

As noted, the instant suit was initiated in March 1982. Ramsey and Boardman contend that because Hugh, prior to disclaiming, entered into a contract to divide his mother's estate he exercised dominion over her estate and thus was not permitted to disclaim.

■ Code § 64.1-194 is controlling. It reads in pertinent part as follows:

> Any . . . assignment, conveyance, encumbrance, pledge or transfer of property or interest therein or contract therefor . . . bars the right to disclaim as to the property or interest.

Here, the commissioner found and the trial court confirmed the following matters:

> [T]he facts clearly show that a contract was entered into prior to the execution by F. Hugh [Niklason] of his disclaimer. The contract provided that the will of Ellowene D. [Niklason] was invalid and her estate was to be divided in accordance with the agreement. The children of F. Hugh Niklason would receive his notes of $10,000.00 and $24,000.00 the payment of which were certainly doubtful, and other assets and the children of Don D. [Niklason] would receive certain assets all in accordance with the agree-

ment. F. Hugh Niklason certainly contracted as to the assets which he later attempted to disclaim.

. . . .

Your Commissioner finds that F. Hugh Niklason entered into a contract for the transfer of his interest in the estate prior to execution of the disclaimer and his right to disclaim was [barred] under Section 64.1-194 of the code.

We are persuaded that by contracting away whatever interest he may have had in his mother's estate, Hugh exercised dominion over her estate contrary to the language of Code § 64.1-194. *See Bostian* v. *Milens*, 193 S.W.2d 797 (Mo. Ct. App. 1946).

■ Hugh raises a second issue: that the trial court's decision in the instant suit modified the final judgment entered in the fiduciary suit and thus the trial court violated Rule 1:1. That Rule reads in relevant part as follows:

All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer.

Rule 1:1 does not apply in the situation presented in this appeal. Ramsey and Boardman had nothing whatever to do with the fiduciary dispute, which concerned the validity of Ellowene's will and the division of her estate. Ramsey and Boardman's claims were against Hugh. The fact that a second, separate lawsuit with different parties and issues directly impacted upon a previous suit does not mean that Rule 1:1 is implicated. That Rule does not address itself to this situation. It concerns further proceedings within the very suit in which a final judgment has been entered. Therefore, we reject appellant's argument concerning Rule 1:1.

For the foregoing reasons, we will affirm the decision of the trial court.

*Affirmed.*