2000 SD 44

### In the Matter of ESTATE OF Agnes LYNG, Deceased.

### No. 21132.

Supreme Court of South Dakota.

Considered On Briefs On Feb. 14, 2000.

Decided March 29, 2000.

Galen G. Gillette of Gillette, Battey & Gillette, Redfield, for appellants Marlene Stacey and Joyce Hove.

Danny R. Smeins, Britton, for appellees Estate and Edward Brandt, Executor.

MILLER, Chief Justice.

[¶ 1.] Certain heirs appeal the circuit court's approval of the final accounting and distribution of an estate and the denial of their motion to remove the executor. We affirm.

## FACTS

[¶ 2.] Agnes Lyng, a widow with no children, died testate on September 1, 1994. Her nephew Edward Brandt was named executor of her estate. Lyng's will, dated October 12, 1984, was admitted to probate without objection. It provided that each of her then-living nieces and nephews (including Brandt) would receive $1,000, with the

residuary of the estate to be divided as follows:

1/5 – Minnie Wallace (Sister)
1/5 – Esther Roehr (Sister)
1/5 – Erna Harvey (Sister)
1/5 – Roy Roehr (Brother)
1/5 – First Lutheran Church

Apparently by oversight, Ella Brandt, Lyng's deceased sister and the mother of Brandt, was not named as a beneficiary in the will. Siblings Minnie Wallace and Roy Roehr also predeceased Lyng. Therefore, Lyng's nieces, Joyce Hove, Marlene Stacey, and Charlene Anderson were in line to take their parents' share of her estate.

[¶ 3.] In addition to serving as the executor of Lyng's estate, Brandt was also the attorney-in-fact for his aunt, Esther Roehr, pursuant to a durable power of attorney. In this capacity, he executed a disclaimer of any of Roehr's interest in Lyng's estate. The disclaimer was signed on November 8, 1994, and was filed on April 19, 1995. It provided in relevant part:

> The undersigned hereby renounces and disclaims all of her right, title and interest in and to [all jointly owned property and any residuary interest passing to Roehr under the will].
>
> This disclaimer is in favor of the Esther Roehr Irrevocable Trust dated November 8, 1994.
>
> This disclaimer is made pursuant to SDCL § 43–4–30 and SDCL § 43–4–30.1 and shall be irrevocable.

Brandt later stated that he executed and filed the disclaimer in order to create an estate plan for Roehr, to decrease her federal estate tax liability. His plan was to create the "Esther Roehr Irrevocable Trust," (Trust) whereby Roehr would be the income beneficiary, and her nieces and nephews would be the remaindermen. The Trust was to be funded with the assets in Lyng's estate disclaimed by Roehr.

[¶ 4.] In September 1995, under the assumption that Roehr's disclaimer in favor of the Trust was controlling, Brandt filed a state inheritance tax return and made an estimated tax payment. Pending the creation of the Trust, Brandt did not file a federal estate tax return. Nor did he file an accounting of estate assets within one year as required by statute. This prompted a demand for accounting by Hove, Stacey and Anderson. In response, on March 28, 1996, Brandt filed an interim accounting, which showed that the only asset owned by Lyng's estate was a one-half ownership interest in certain real estate.[1]

[¶ 5.] Approximately one year later, Hove and Stacey filed a petition for removal of Brandt as executor, claiming his dual roles as executor of Lyng's estate and attorney-in-fact for Roehr created a conflict of interest. They alleged further conflict of interest and self-dealing by Brandt, evidenced by the fact that he and his sister were not beneficiaries in Lyng's estate, but were included in Roehr's will and the proposed Trust agreement. However, the petition was never heard before the court and was presumably withdrawn.

[¶ 6.] After several years of negotiations, Brandt was ultimately unable to get the family to agree to the terms of the Trust, and it was never created. In May 1998 Brandt sold Lyng's one-half interest in the real estate to Roehr, who owned the other half. Five months later he filed an amended state inheritance tax return, showing that Roehr now claimed the assets she had previously disclaimed. As a result, she owed additional state inheritance taxes and incurred over $7,000 in interest charges because the additional taxes were more than three years overdue.[2]

---

1. The total value of Lyng's estate was over $500,000. Roehr was either a joint owner or a beneficiary of the bulk of the assets (approximately $400,000).

2. Total state inheritance taxes levied were approximately $58,000, $57,000 of which was due from Roehr. $36,000 of the total amount was paid in September 1995. The unpaid balance of $22,000 accrued interest at 10% for 3 ½ years until Roehr paid it in March 1999. By that time accrued interest totaled over $7,000.

[¶ 7.] In April 1999 Hove and Stacey filed a second petition for removal of executor. Within a week, Brandt filed a final account and petition for final distribution. Hove and Stacey filed objections to the final account. All these matters were heard before the circuit court on June 2, 1999. In a memorandum decision two days later, the court approved the final account and petition for final distribution and denied Hove and Stacey's petition. A corresponding order was entered on June 21, 1999.

[¶ 8.] Hove and Stacey appeal, raising the following issues:

1. Whether the circuit court erred in approving the final account and distribution?

2. Whether the circuit court erred in refusing to remove Brandt as executor of the estate?

## DECISION

[¶ 9.] **1. The circuit court did not err in approving the final account and distribution of the estate.**

[¶ 10.] In this appeal we are asked to decide whether the trial court erred in determining that Lyng's estate was ready for settlement. This is a factual determination subject to a clearly erroneous standard of review. "In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo." *Estate of Hobelsberger,* 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970) (citations omitted). "The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed." *Id.*

[¶ 11.] The circuit court found that all necessary tasks of administering Lyng's estate were successfully completed, therefore it approved the final account and issued a final decree of distribution. Hove and Stacey contend, however, that the disclaimer filed by Brandt on behalf of Roehr precluded approval of the final account. Brandt maintains the disclaimer was a "conditional disclaimer," and since its condition was not satisfied, i.e., the Trust was not created, the disclaimer was void and of no effect. In contrast, Hove and Stacey argue that notwithstanding the condition attached to the disclaimer, it was still valid and enforceable. They describe the disclaimer as a "straight disclaimer," which operated to cede Roehr's interest in the property to the estate as though she predeceased Lyng. We disagree.

[¶ 12.] There exists a generally recognized presumption of the acceptance of a beneficial testamentary gift. *In re Mead's Estate,* 227 Wis. 311, 277 N.W. 694, 701 (1938), *reh'g denied,* 227 Wis. 311, 279 N.W. 18 (1938); *Goodsman v. Jannsen,* 234 Iowa 925, 14 N.W.2d 647, 648 (1944); *see generally* Annotation, *What Constitutes or Establishes Beneficiary's Acceptance or Renunciation of Devise or Bequest,* 93 A.L.R.2d 8, § 4 (1964) (citing cases). Therefore, the renunciation of such a gift must be clear and unequivocal. Annotation, *supra,* § 25. In addition, the devisee may not assume dominion and control over the gift so as to dictate its direction in the event of his or her renunciation. *McCormick v. Engstrom,* 119 Kan. 698, 241 P. 685, 687 (1925). "Such an exercise of dominion and dictation would be virtually an acceptance rather than a renunciation." *Id.*[3]

3. The IRS also recognizes that any reservation of control would be an acceptance rather than a renouncement. Treas.Reg. § 25.2518–2(e)(1) provides:

A disclaimer is not a qualified disclaimer unless the disclaimed interest passes without any direction on the part of the disclaimant to a person other than the disclaimant.... If there is an express or implied agreement that the disclaimed interest in property is to be given or bequeathed to a person specified by the disclaimant, the disclaimant shall be treated

[¶ 13.] SDCL 43–4–36 [4] contemplates situations where a disclaimant has assumed control over property sufficiently to show acceptance rather than renouncement. Under that statute, if a disclaimant assigns, conveys, encumbers, pledges or transfers a property interest bequeathed to him or her under a will, the disclaimer is invalidated. Additionally, if the disclaimant accepts the property or benefits therefrom, the disclaimer is invalidated.

■ [¶ 14.] Given the provisions of SDCL 43–4–36 and the idea that a renunciation must be unconditional in order to be effective, the disclaimer filed on behalf of Roehr must be deemed invalid. It is undisputed that the condition of the disclaimer was not satisfied, i.e., the Trust that was to receive the disclaimed assets was not created. However, even if the condition had been met, the disclaimer still would have been null and void. By directing the destination of the disclaimed assets, Roehr essentially retained control over the property sufficiently to invalidate the purported disclaimer. Her actions demonstrate acceptance of the property rather than rejection.

[¶ 15.] In addition, the record shows that at least a portion of the purportedly disclaimed assets had been accepted by Roehr before the disclaimer was filed. Certain life insurance and annuity contracts naming Roehr, Harvey and Hove as beneficiaries were paid on September 28, 1994. This was approximately six weeks before the disclaimer was signed and almost seven months before it was filed. Thus, the benefits of those assets were accepted, and any attempt to later disclaim them was invalid pursuant to SDCL 43–4–36(3).

■ [¶ 16.] SDCL 43–4–35 provides that any disclaimer such as the one at issue here "shall be exercised in the best interests of the estate and the ultimate beneficiaries thereof. Any such disclaimer shall not unreasonably alter an existing testamentary plan [.]" In naming Roehr as joint owner or beneficiary on nearly all her assets, it is manifest that Lyng intended her property go to her sister after she died. In addition, Lyng intended that Roehr share in a portion of her residuary estate, as set forth in her will. The facts show that Lyng wanted Roehr to inherit the majority of her estate, and Roehr wanted to disclaim such property only if it could be diverted into the Trust. Having been unsuccessful at creating the Trust, the alternative was to revert back to Lyng's will as if no disclaimer had ever been filed. This is exactly what Brandt did. We affirm the circuit court's decision, as a review of the record shows it was not clearly erroneous.[5]

[¶ 17.] **2. The circuit court did not err in refusing to remove Brandt as executor of the estate.**

■ [¶ 18.] The decision of whether to remove a personal representative is usu-

as directing the transfer of the property interest.

This has been interpreted to mean that in order to receive favorable tax treatment, a beneficiary may not disclaim property on the condition that it pass to a trust in which the disclaimant holds an interest. In addition to disclaiming the testamentary gift, the disclaimant must also disclaim the interest in the trust. Lynn P. Hart, *Advanced Issues in Disclaimer Planning: Sharpening an Old Tool*, C966 ALI–ABA 309, 349–51 (1994). This is exactly the situation Brandt was attempting to create with the disclaimer. Under this analysis, even if the assets had been successfully disclaimed in favor of the Trust, Roehr still would not have accomplished her goal of receiving favorable federal estate tax treatment.

4. SDCL 43–4–36 was in effect when Lyng died in 1994, but was repealed by the legislature in 1995 when it enacted the South Dakota Uniform Probate Code. 1995 S.D.Laws ch. 167, § 184.

5. Hove and Stacey argue that our decision in *Estate of Berg*, 355 N.W.2d 13 (S.D.1984), where we held that a surviving spouse must obtain court approval before revoking a previously filed disclaimer, must be followed. However, in *Berg* the disclaimer at issue was deemed valid. Here, the disclaimer is void and of no effect, therefore it need not be revoked, let alone receive court approval prior to revocation.

ally reviewed under an abuse of discretion standard. *Estate of Unke*, 1998 SD 94, ¶ 29, 583 N.W.2d 145, 150 (citing 31 Am. Jur.2d *Executors and Administrators* § 277 (1989)). " 'Abuse of discretion' is discretion not justified by, and clearly against, reason and evidence." *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 906 (S.D.1994) (citing *Dacy v. Gors*, 471 N.W.2d 576, 580 (S.D.1991)). "The test is whether a judicial mind, in view of the law and circumstances, could reasonably have reached the [same] conclusion." *Id.*

■■ [¶ 19.] In denying Hove and Stacey's petition for removal of Brandt as executor, the court wrote:

> The Court having heard evidence and argument has determined that this estate has been in effect for several years and that the Executor has acted in a dual capacity as Executor and also as Power of Attorney for Esther Roehr and that in hindsight, considering everything, a lot of the actions probably should have been done differently but that the Executor has not in any substantive fashion violated any of the oaths of his office and that the motions made by the Objectors be denied.

SDCL 30–14–4,[6] in effect at the time of Lyng's death, states:

> Whenever the judge of the circuit court has reason to believe, from his own knowledge or from credible information, that any executor or administrator has wasted, stolen or mismanaged, or is about to waste or steal the property of the estate committed to his charge, or has committed or is about to commit a fraud upon the estate, or is incompetent to act, or has permanently removed from the state, or has wrongfully neglected the estate, or has long neglected to perform any act as such executor or administrator, he must, by an order entered upon the records of the court, suspend the powers of such executor or administrator until the matter is investigated.

[¶ 20.] Among the alleged violations of this statute are that Brandt failed to timely file an inventory of estate assets or an initial accounting, that he commingled Roehr's funds with the funds of the estate for over four years, that he did not timely file state inheritance tax or federal estate and income tax returns, and that he included an individual who was not an heir in the estate distribution. Hove and Stacey further assert his actions in filing, then withdrawing, the disclaimer caused Roehr to incur substantial interest charges. Also, they claim Brandt had a conflict of interest between his role as executor of Lyng's estate and attorney-in-fact for Roehr, because he was an heir under Roehr's will but not under Lyng's will. We disagree with these contentions.

[¶ 21.] The delays in filing the various state and federal returns, as well as the belated filing of the estate inventory and accountings, were all attributable to the prolonged negotiations between family members in the unsuccessful attempt to create the Trust and avoid federal estate taxes for Roehr. When it became clear the family was not going to agree upon the terms of the Trust, Brandt filed the necessary returns and paid the inheritance taxes due from Roehr. The additional interest paid by Roehr may have been unnecessary, but it was caused by the actions of *all* parties involved.

[¶ 22.] Brandt admitted commingling the estate's and Roehr's funds, but there was no evidence of resulting harm or defalcation. In fact, Hove and Stacey's attorney stated at the hearing that "he had no particular objection" with regard to the expenses of the estate. Further, although Brandt initially paid a $1,000 gift to Lyng's step-niece, he did so only because he thought Lyng considered her a niece. After the court determined such distribution was improper, Brandt agreed to reimburse

---

6. This statute was also repealed by the legislature in 1995 when it enacted the South Dakota Uniform Probate Code. 1995 S.D.Laws ch. 167, § 158. *See* footnote 4, *supra.*

the estate. Finally, Brandt charged the estate only $1,000 for five years' work as executor of the estate. These actions are not indicative of an executor who has wasted, stolen or mismanaged an estate. The record does not show the circuit court abused its discretion in failing to remove Brandt as executor.

[¶ 23.] Affirmed.

[¶ 24.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.