44 Cal.Rptr.3d 906 (2006)
140 Cal.App.4th 1385
CONSERVATORSHIP OF the Person and Estate of Laura Snow Auston HUME.
John S. Williams, as Public Guardian, etc., Petitioner and Respondent,
v.
William Snow Hume, Objector and Appellant.
No. G036141.
Court of Appeal, Fourth District, Division Three.
June 29, 2006.
William Snow Hume, in pro. per., for Objector and Appellant.
Benjamin P. de Mayo, County Counsel, and James C. Harvey, Deputy County Counsel for Conservator and Respondent.

OPINION
SILLS, P.J.

I
We publish this case to make explicit what is otherwise implicit in the statute dealing with objections to inventories and accountings in conservatorship proceedings *907 (Prob.Code, § 2614[1])namely that the burden of proof is on the objector to the inventory and accounting, not on the conservator.
The facts are simple: The Orange County Public Guardian was appointed conservator of Laura Snow Auston Hume sometime prior to June 2004. In June 2004 the public guardian filed a final inventory and appraisal of Laura's estate. One of her children, William Snow Hume, filed objections.[2] A hearing was held, and the trial court entered an order overruling the objections and "accept[ing]" the inventory and appraisal "as is." William Snow Hume then filed this appeal.[3] His primary contention is that the trial court erred in placing the burden of proof on him to show that the various appraisals contained in the inventory were erroneous, rather than placing the burden of proof on the conservator to show the validity of, in his words, the "contested valuations" in the inventory.[4]
The burden of proof is to law what inertia is to physicsa built-in bias in favor of the status quo. (See Evid.Code, § 500.[5]) That is, if you want the court to do something, you have to present evidence sufficient to overcome the state of affairs that would exist if the court did nothing. Of course, the hard work for courts presented with burden of proof issues is to ascertain the true nature of the status quo, or the baseline where the court starts. In regard to the present case, the text of the general governing statute, section 500 of the Evidence Code, merits explication. In its entirety, it reads: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Italics added.)
*908 A review of the relevant Probate Code statutes governing inventory and accountings in conservatorship proceedings establishes that the status quo is the conservator's duty to file an inventory. Functionally, it is the objector who seeks to upset the status quo.
The conservator's duty to file accountings is set forth in sections 2610 and 2620. For our purposes, the key point is that these statutes impose a mandatory duty on the part of conservators (or guardians) to file accountings and inventories. The operative words are "shall file,"[6] "shall take and subscribe to an oath that the inventory contains a true statement of all of the estate"[7] and "shall present the accounting."[8] In particular, the requirement of an oath as to the veracity of the inventory in all cases implies that, whatever further proceedings might occur, courts begin with the presumption of accuracy. The baseline, or status quo, is the fact of the filed, verified accountings, which will be operative unless something else happens.
That conclusion is confirmed by the structure and text of the statute governing objections to inventories and accountings, section 2614.[9] In contrast to the mandatory duty on the part of the conservator to file inventories and accountings, section 2614 clearly makes filing objections a voluntary matter. Any interested party "may file written objections to any or all appraisals." (Italics added.) And while subdivision (c) requires the court to "determine the objections," it doesn't require it to "fix the true value of any asset to which objection has been filed." Rather, the court may do so. Finally, subdivision (c) of section 2614 contains some explicit disincentives against filing frivolous objections. In response to objections, the court has the power to "cause an independent appraisal" to be made, and if "the objection is rejected by the court" the court has the power ("may" again) to "assess the cost of any such additional appraisal" *909 against the objecting party. By contrast, if the objection is well taken, the court has the power to impose the cost of the appraisal "at the expense of the estate," but in that situation the statute makes no provision to have that cost borne by the conservator.
The picture of the statute is thus remarkably consistent: There will be inventories and accountingsthat is a given. Those inventories and accountings will be sufficient by themselves because they are required to be under oath and objections need not be filed at all. But, as a safety valve, interested parties may file objections. If those objections lead to an unnecessary appraisal, the court can impose the costs of any such unnecessary appraisal on the objector. If those objections lead to an, appraisal that proves necessary, the court has the authority to impose the expense on the estate. Thus, again, the court begins with the status quo of the verified accountings, and it is the objector who assumes the role of upsetting that status quo. We may conclude from this structure that the burden of proof in any hearing on objections is on the objector.
Now that we have seen what the probate statutes have to say, we return to Evidence Code section 500 to round out the picture. As would be expected, the general statute in the Evidence Code dovetails perfectly with the more specific statutes in the Probate Code. The operative words in Evidence Code section 500 are "essential to the claim for relief or defense." The conservator's accounting, because it is mandatory, can hardly be described as a claim for relief or defense. It is a duty, period. It is the objector who seeks relief by trying to change the result that would normally obtain without intervention, which would be acceptance of the accounting. While one can speculate as to the pros and cons of a statutory regime that imposes the burden of proof on a party objecting to a conservator's accounting,[10] we cannot escape the conclusion that that is indeed the statutory regime, and the trial court's approach was thus in accord with it.
William Snow Hume's argument in favor of putting the burden on the conservator centers on sections 1060 through 1064 of the Probate Code (generally governing all accounts to be filed with the court)[11] and in particular section 1064, which contemplates a petition for approval of an account.[12] (Interestingly enough, though, the statute relaxes the necessity of filing a formal petition, deeming the very fact of filing an account to include a petition for *910 approval.[13]) William Snow Hume reasons that a petition for approval of an account necessarily contemplates confirmation of any inventory (a point which appears to be sound), and thus, as petitioner, the conservator should bear the burden of proof in any proceedings contesting an inventory.
The flaw in the argument is that it conflates two different contexts. For sake of argument, it may be the case that a person filing an account bears the burden of making at least a prima facie case of compliance with the various requirements for an account set forth in sections 1061 through 1063. (For example, is the account statutorily deficient because it fails to contain a summary showing, if applicable, any "net loss from trade or business"? (See section 1061, subd. (a)(8).)) And if this case involved objections to the accounts presented by the public guardian based on deficiencies in the accounts under sections 1061 through 1063, William Snow Hume might indeed have a point. (We do not say yea or nay on this precise issue, just maybe.)
But this case involves another context, one that is specifically governed by section 2614,[14] in which, as we have seen, the status quo is the already-filed appraisal. (Remember the requirement in the statute that any objections be filed within 30 days of the filing of the inventory and appraisal.) In that context, litigants are afforded the opportunity to contest the appraisal as objectors, but (to be repetitive), if they don't object, the appraisal is the default result. And in fact that conclusion is underscored by the provision in section 1064, subdivision (b), which deems the filing of any account to include a petition for its approval. That confirms the paradigm of the statutes in which, at least from the vantage point of the objector proceeding under section 2614 as to appraisals of property, the starting point (the status quo) is the account already filed.
William Snow Hume also directs our attention to two other statutes, sections 1044 and 8906. Section 1044 is merely one sentence: "The petitioner or other party affirming is the plaintiff and the party objecting or responding is the defendant." The statute confirms our analysis: Courts construing the statute's predecessors have looked at it functionally, assigning the role of "plaintiff" to the party seeking to upset the status quo. (See Estate of J.M. Wooten (1880) 56 Cal. 322, 325 [assigning role of "plaintiff" to guardian of minor child who sought revocation of letters of administration then held by half brother]; Slosberg v. Municipal Court of the City of Los Angeles (1950) 101 Cal.App.2d 238, 241, 225 P.2d 312 [assigning role of plaintiff to New York resident who initiated OSC to include certain clothing in inventory, in part based on predecessor to section 1044 and in part because she "set in motion the particular proceeding involved"].)
Section 8906, subdivision (d), explicitly states that as regards appraisals of property in conjunction with the final distribution of a decedent's estate, the burden of proof is on the person objecting to the appraisalthe statute does explicitly what we have concluded section 2614 does implicitly. (Section 8906, subdivision (d) states: "The person objecting to the appraisal has the burden of proof.") And like section 2614, subdivision (c), subdivision (e) of section 8906 poses disincentives against filing frivolous objections.
*911 Does section 8906 confirm, or cast doubt on, our conclusion that the burden is on the objector to an appraisal in the guardianship context? It certainly shows that the Legislature knows how to explicitly assign the burden of proof in appraisal and objection contexts and explicitly put it on the objector if it wants to. On the one hand, one can posit that by making the burden explicit in section 8906, the Legislature may have been varying the rule that would otherwise be the case if there was no mention of the burden. On the other hand, it shows a Legislative inclination to assign the burden to the objector in other appraisal contexts, and particularly in the analogous situation where the objector runs the risk of some monetary penalty (penalty in the generic sense) for a frivolous objection. It is enough to say that our conclusion concerning section 2614 is perfectly consonant with section 8906, and surely offends no structural policy contained in section 8906.
Finally, in a petition for rehearing, William Snow Hume cites a number of cases which he claims imposed the burden of proof on guardians. The cases are inapposite, though, because they all involved expenditures, not appraisals. (See Guardianship of Vucinich (1935) 3 Cal.2d 235, 44 P.2d 567 [guardian failed to provide receipts in support of his claim for child support reimbursement]; In re Guardianship of Cookingham (1955) 45 Cal.2d 367, 289 P.2d 16 [objection to guardian's failure to obtain court approval for costs associated with defending the guardianship]; In re Moore's Estate (1891) 88 Cal. 1 [objection to guardian having exceeded amount approved by court for home repairs]; In re Barreiro's Estate (1932) 125 Cal.App. 752, 14 P.2d 786 [executor had duty to justify fees paid to foreign attorney].)

II
We now address the remaining issues in the case.
(1) The original inventory and accounting lumped the conservatee's shares of stock in a certain corporation together with the value of land owned by that corporation. After William Snow Hume filed his objections, the public guardian filed a "corrected" inventory and appraisal which imputed a certain value to the land but no value to the stock. On appeal William Snow Hume argues that the order approving the inventory and appraisal "as is" didn't properly identify which one (the original or corrected) was being approved. The answer is that the order is not fatally uncertain. Obviously, a "corrected" inventory will take precedence over an original, uncorrected one. (See In re Marriage of Micalizio (1988) 199 Cal.App.3d 662, 671-672, 245 Cal.Rptr. 673 [an amended judgment superseded the original judgment and remained in effect as the operative judgment, and remained so until such time as it was explicitly declared void].)
(2) And, in regard to that specific real property, William Snow Hume argues that there was insufficient evidence that the probate referee did not personally "herself" appraise the property as required by section 8902, subdivision (b) (probate referee "shall appraise all property other than that appraised by personal representative"). This argument fails because it is Hume's burden to show error on appeal (e.g., County of Orange v. Smith (2005) 132 Cal.App.4th 1434, 1443, 34 Cal. Rptr.3d 383), and  shades of the argument concerning the burden of proof  in his opening brief he identifies no specific evidence that would compel the trial court to conclude that the probate referee didn't appraise the property "herself."
(3) William Snow Hume's final contention is that he was entitled to a statement of decision. This argument does not prevail because, while William Snow Hume's request was indeed timely, the request failed to identify specifically which issues he wanted the trial court to address. The actual request for a statement of decision was extremely brief, consisting of two sentences, and was pretty much a blanket request for a statement on anything that came up in any way.[15] That was much too broad. A party is not entitled to a statement of decision based on a "general inquisition" that "unfairly burdens the trial judge in that he must not only speculate which questions embrace ultimate as distinguished from evidentiary facts, but also search his recollection of the record without the assistance of a suggestion from counsel." (McAdams v. McElroy (1976) 62 Cal.App.3d 985, 993, 133 Cal.Rptr. 637; see also Moreno v. Jessup Buena Vista Dairy (1975) 50 Cal.App.3d 438, 447, 123 Cal.Rptr. 393.) The request here is the archetype of a "general inquisition."

III
The order overruling William Snow *912 Hume's objections is affirmed.[16] Respondent shall recover its cost on appeal.
WE CONCUR: BEDSWORTH and FYBEL, JJ.
NOTES
[1] Unless otherwise explicitly designated, all further statutory references are to the Probate Code. We quote the statute in the text of the opinion.
[2] Since the respondent public guardian does not raise the issue of whether the objections were untimely, we do not decide the issue and our opinion should not be construed as commenting on the issue in any way.
[3] The question of mootness arises because of the conservatee's death after the filing of the opening brief. However, because of the possibility that the personal representative of a probate estate may, to the prejudice of an objector in a conservatorship proceeding, incorporate by reference an accounting provided by a conservator without further independent investigation, this appeal is not moot. (See Conservatorship of Estate of Hume (2006) 139 Cal.App.4th 393, 396, fn. 3, 42 Cal. Rptr.3d 796; accord, David v. Hermann (2005) 129 Cal.App.4th 672, 683, 28 Cal. Rptr.3d 622 [probate orders, if "actually passed upon by the probate court" may have collateral estoppel effect].)
[4] For example, in his objections William Snow Hume asserted that certain real property owned by the conservatee in the City of Commerce had been overvalued in the inventory. On appeal, in the context of his burden of proof argument, he asserts that the probate referee had the duty to adduce "positive evidence" that she made an adjustment in valuing the property for remediation costs for organic toxic spills on the premises.
[5] The classic formulation for this idea was in former section 1981 of the Code of Civil Procedure, which stated that "The party holding the affirmative of the issue must produce evidence to prove it." Numerous California older cases thus phrased burden of proof discussions in terms of "affirmative of the issue." (E.g., Peabody v. City of Vallejo (1935) 2 Cal.2d 351, 381, 40 P.2d 486; see more generally Barnes v. Hussa (2006) 136 Cal.App.4th 1358, 1364-1366, 39 Cal.Rptr.3d 659 [water rights case].) Other states often use the same formulation. (E.g., Atlantic and Pacific Insurance Company v. Barnes (Colo.App.1983) 666 P.2d 163, 165.) In 1965, though, the Legislature replaced section 1981 of the Code of Civil Procedure with section 500 of the Evidence Code, which dispensed with the phrase "affirmative of the issue," and focused judicial attention on facts "essential to the claim for relief." The change, as we are about to show, makes the result in the present case easier to ascertain.
[6] Section 2610, subdivision (a) provides: "Within 90 days after appointment, or within such further time as the court for reasonable cause upon ex parte petition of the guardian or conservator may allow, the guardian or conservator shall file with the clerk of the court an inventory and appraisal of the estate, made as of the date of the appointment of the guardian or conservator."
[7] Section 2610, subdivision (b) provides: "The guardian or conservator shall take and subscribe to an oath that the inventory contains a true statement of all of the estate of the ward or conservatee of which the guardian or conservator has possession or knowledge. The oath shall be endorsed upon or annexed to the inventory."
[8] Section 2620, subdivision (a) provides: "At the expiration of one year from the time of appointment and thereafter not less frequently than biennially, unless otherwise ordered by the court, the guardian or conservator shall present the accounting of the assets of the estate of the ward or conservatee to the court for settlement and allowance in the manner provided in Chapter 4 (commencing with Section 1060) of Part 1 of Division 3."
[9] Section 2614 provides:

"(a) Within 30 days after the inventory and appraisal is filed, the guardian or conservator or any creditor or other interested person may file written objections to any or all appraisals. The clerk shall set the objections for hearing not less than 15 days after their filing.
"(b) Notice of the hearing, together with a copy of the objections, shall be given for the period and in the manner provided in Chapter 3 (commencing with Section 1460) of Part 1. If the appraisal was made by a probate referee, the person objecting shall also mail notice of the hearing and a copy of the objection to the probate referee at least 15 days before the time set for the hearing.
"The court shall determine the objections and may fix the true value of any asset to which objection has been filed. For the purpose of this subdivision, the court may cause an independent appraisal or appraisals to be made by at least one additional appraiser at the expense of the estate or, if the objecting party is not the guardian or conservator, and the objection is rejected by the court, the court may assess the cost of any such additional appraisal or appraisals against the objecting party."
[10] One might postulate, for example, that forcing conservators to affirmatively demonstrate the validity of an appraisal or other change to their accountings and inventories, perhaps even if there were no objections, would be an important check against abuses that conservators might perpetrate against the elderly, though such a rule would undoubtedly impose higher costs of administration on the estates of conservatees, and might not be worth the extra expense. We express no opinion on the point except to note that if William Snow Hume believes that the regime imposing the burden of proof on objectors is insufficiently protective of conservatees or their estates, his remedy lies with the Legislature.
[11] Section 1060 simply tells the reader that chapter 4 (of Division 3) of the Probate Code, i.e., sections 1060 through 1064, "governs all accounts to be filed with the court." Sections 1061, 1062 and 1063 impose detailed requirements as to what accountings must contain (for example, a summary (section 1061) that has "detailed schedules showing" all receipts (section 1062, subdivision (a))).
[12] Section 1064, subdivision (a) opens with the sentence: "The petition for approval of the account or a report accompanying the petition shall contain all of the following" and then lists five things to be included (for example, a "statement of all compensation paid from the assets subject to the account to the fiduciary or to the attorneys for the fiduciary other than pursuant to a prior court order" (section 1064, subdivision (a)(3))).
[13] Section 1064, subdivision (b) provides: "The filing of an account shall be deemed to include a petition requesting its approval, and may include additional petitions for authorization, instruction or confirmation authorized by the code, including, but not limited to, a request for an order for compensation of the fiduciary and the attorney for the fidiciary."
[14] William Snow Hume's objections filed with the trial court were filed under a heading that specifically referenced section 2614, and nowhere mention sections 1061 through 1063.
[15] We quote the entirety of the request in full:

"Respondent William Snow Hume requests a statement of decision upon each of the principal controverted issues at trial on the above-captioned proceeding. Such issues whose decisions are asked to be stated include any propositions of fact or law set forth in any of the pleadings or trial briefs in this proceeding, as well as any issues that are raised by any other means at any time through trial."
[16] In his objections, William Snow included the public guardian's failure to include certain Tennessee agricultural property owned by the conservatee in the inventory. That issue was dealt with in Conservatorship of Hume (2006) 139 Cal.App.4th 393, 42 Cal. Rptr.3d 796, a case involving William Snow Hume's father, Edward Hume. William Snow Hume did not include the issue of the Tennessee property in his briefing in this case, involving his mother, so our judgment does not affect the accounting as to that issue.