Filed 8/12/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CYNDI VANCE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DON BIZEK,<br><br>    Defendant and Respondent. | 2d Civil No. B243061<br>(Super. Ct. No. PR110031)<br>(San Luis Obispo County) |

This case turns on the trial court's mis-assignment of the burden of proof. The presumption created by section 16004 of the Probate Code that a trustee who commingles trust funds with her own funds violates her fiduciary duty to the trust applies only to the relationship between a trustee and trust beneficiaries. Here, the trial court applied the presumption for the benefit of a *creditor* of the trustee, not a beneficiary of the trust. This was error.

The beneficiary of a trust may disclaim the beneficial interest as long as she has not already accepted that interest. Sally Gordon was both a trustee and a beneficiary of the Wallace and Pearl Burt Trust (WPB Trust). Respondent Don Bizek, who is a stranger to the WPB Trust, obtained a judgment against Gordon in an unrelated case and sought to execute his judgment against Gordon's beneficial interest in the WPB Trust. In response, Gordon filed a disclaimer of her beneficial interest in the WPB Trust. If the disclaimer is valid, it caused Gordon's beneficial interest to descend to appellant Cyndi

Vance, Gordon's daughter and successor beneficiary. If the disclaimer is void, Bizek may attach Gordon's beneficial interest in the WPB Trust.

The trial court ruled that Gordon's disclaimer was void, finding that Gordon's use of WPB Trust funds before she filed her disclaimer demonstrated acceptance of her beneficial interest in the Trust. In reaching this result, the trial court accepted Bizek's argument that the section 16004 presumption imposed on Gordon the burden to prove that her commingling of WPB Trust funds with her own funds *did not* demonstrate her acceptance of her beneficial interest in the WPB Trust. We disagree. Bizek was not entitled to the section 16004 presumption and thus had the burden to prove that Gordon's use of WPB Trust funds demonstrated acceptance of her beneficial interest in the Trust. He failed to meet that burden. We reverse and remand.

*FACTS*

*1. The Wallace and Pearl Burt Trust*

Wallace and Pearl Burt (settlors) executed the Wallace and Pearl Burt Trust on January 13, 1992, and signed an amended version of the Trust on January 25, 2006. The amended trust named Gordon, the biological child of Pearl Burt, and Linda Larsen, the biological child of Wallace Burt, as cotrustees. The amended trust required the consent of both cotrustees to any Trust transactions. During the lifetimes of the settlors, the WPB Trust gave the cotrustees substantially unlimited power to disburse the income and principal of the WPB Trust for the "health, education, support, comfort, enjoyment, and welfare" of settlors, including the power to sell, invest and to mortgage Trust property. Upon the death of both settlors, all remaining assets of the Trust were to be distributed to Gordon and Larsen or their surviving issue.

On June 2, 2010, the probate court removed Gordon as cotrustee of the WPB Trust on Larsen's motion. Pearl Burt died on November 27, 2010 and Wallace Burt died a week later, on December 4, 2010.

*2. The Pearl Burt Trust*

The Pearl Burt Trust was a separate trust for the benefit of Pearl Burt. Gordon was the sole beneficiary of the Pearl Burt Trust and was also the sole trustee until

2

her resignation on April 6, 2011.  Gordon was trustee of the Pearl Burt Trust during the time she was a cotrustee of the WPB Trust.

### 3.  Bizek's claims against Gordon

Gordon was at one time a trustee of a third trust, the Helen Trumm Trust (Trumm Trust).  Respondent Don Bizek, a beneficiary and cotrustee of the Trumm Trust, sued Gordon for an accounting of the Trumm Trust and obtained a judgment against Gordon for $987,747.  Bizek then filed a petition to enforce his judgment against Gordon's beneficial interest in the WPB Trust.  The probate court granted Bizek's petition on April 6, 2011.

### 4.  Gordon's disclaimer

On April 6, 2011, the same day the probate court granted Bizek's petition, Gordon executed a disclaimer of her entire beneficial interest in the WPB Trust.  The disclaimer stated:  "I, Sally J. Gordon, hereby disclaim any and all of my interest in the property to [sic] which I am otherwise entitled to take as a beneficiary of the Wallace and Pearl Burt Trust dated January 13, 1992 pursuant to Section 7.13 of the Restatement of the Wallace and Pearl Burt Declaration of Trust Dated January 25, 2006, and as provided in sections 275 et. seq. of the California Probate Code."[1]

### 5.  The trial court proceedings

Vance filed a petition for instructions pursuant to section 17200, subdivision (a), asking the court to confirm that Gordon's disclaimer of her beneficial interest in the WPB trust was valid and thus caused that interest to descend to Vance. Bizek filed a Petition for Declaratory Relief seeking a declaration that Gordon's disclaimer was void.  The trial court tried the opposing claims together.

At the hearing, Bizek attempted to prove that Gordon mishandled WPB Trust funds to which she had access as trustee, using some of those funds for her own benefit.  Bizek relied substantially on the testimony of Barbara Aspelin.  Bizek did not attempt to establish Ms. Aspelin's expertise in trust accounting or any other field of

---

[1] All statutory references are to the Probate Code unless stated otherwise.

3

expertise. His appellate brief identifies Ms. Aspelin as the spouse of Bizek's counsel and a paralegal in his law office. Ms. Aspelin used bank records and other documents to describe the following categories of transfers:

(1) Between March 2007 and July 2009, monthly transfers in the amount of $2,500 were made from a WPB Trust account to a Pearl Burt Trust account. These transactions totaled $72,500. The bank records did not specify the person who authorized the transfers. Gordon was a cotrustee of the WPB Trust at the time all the transfers were made. However, Gordon testified that her mother, Pearl Burt, authorized the transfers. The transfers were made without the consent of Gordon's cotrustee, Larsen.

Ms. Aspelin then described 13 other transactions, most reflecting transfers from Pearl Burt Trust accounts of which Gordon was a trustee to other Pearl Burt Trust accounts of which Gordon was a trustee and, finally, several transfers from Pearl Burt Trust accounts to personal accounts belonging to Gordon or Vance. The trial court found that:

(1) Aspelin's documentary evidence "traced" WPB Trust funds to Gordon's private accounts.

(2) Title to a mobile home belonging to the WPB Trust was transferred to the Pearl Burt Trust in September 2008. The mobile home was later sold for approximately $49,000. The proceeds of the sale were deposited into a Pearl Burt Trust account on which Gordon had signature authority as trustee. Ms. Aspelin opined that a portion of the proceeds later went into Gordon's personal account. Although the documentary evidence was not conclusive, the trial court credited Ms. Aspelin's testimony.

(3) Pearl Burt, accompanied by Gordon, personally withdrew $5,000 from a WPB Trust account in July 2009. The trial court found that this amount went directly to Gordon.

Based on Ms. Aspelin's testimony and the documents on which she relied, the trial court found that Gordon's disclaimer was void because she had received

4

"benefit" from the WPB Trust before she disclaimed her interest in it. The court made the following findings:

"1. Because Gordon was the sole beneficiary of the Pearl Burt Trust she benefited herself from using funds from the Wallace and Pearl Burt Trust to pay Pearl Burt's expenses;

"2. Once the funds came to rest within the Pearl Burt trust, Larsen lost all control of the funds as cotrustee of the Wallace and Pearl Burt trust;

"3. Gordon benefited from the co-mingling of money of the two trusts and accepted the co-mingling benefits [*sic*] by receiving Wallace Burt funds when they were dispersed to Gordon from the Pearl Burt trust."

## *DISCUSSION*

### *1. Standard of review*

Vance's petition for instruction asked the trial court to determine that Gordon's disclaimer of her beneficial interest in the WPB trust was valid pursuant to section 275. Bizek's request for declaratory relief sought the contrary finding. The mirror-image requests present mixed questions of law and fact. "'We review the trial court's findings of fact to determine whether they are supported by substantial evidence, . . . consider[ing] all of the evidence in the light most favorable to the prevailing party. . . . [Citations.]." (*ASP Properties Grp. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.) To the extent the trial court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo.

### *2. Gordon had the capacity to*
### *accept a contingent interest.*

The trial court based its finding that Gordon accepted her beneficial interest in the WPB Trust on three sets of transfers. Those transfers occurred between 2007 and 2009, and before the settlors died in 2010. Gordon contends that California law prohibited her from accepting her beneficial interest in the WPB Trust while the settlors were alive because her interest in the trust was contingent upon their deaths. She is incorrect.

5

The only California authority on this issue is a 1929 Court of Appeal decision stating, in dicta, that a contingent interest may not be accepted until it vests by occurrence of the contingency. (*Meilink v. Gianelli* (1929) 100 Cal.App. 615.) In *Meilink*, the beneficiaries executed a written disclaimer of their interest in stocks devised by their father and purported to grant their interest to the creditors of their father's corporation. The Court of Appeal concluded that the disclaimer had no effect because the father's estate had not been settled at the time the disclaimer was executed and that "there can be no effective acceptance until it has been determined that [the beneficiaries] are at least entitled to have the stock distributed to them . . . ." (*Id.*, at p. 617.)

*Meilink* was decided before section 275 was enacted and appears to have been superseded by it. Nothing in the Probate Code prohibits a beneficiary from accepting a contingent benefit. The Code's broad definition of "'interest'" encompasses both vested and contingent interests. (*In re Estate of Brown* (1938) 24 Cal.App.2d 573, 575). A beneficiary may disclaim any of these interests, provided that the interest has not been accepted. (*Ibid.*; §§ 275, 285, subd. (b)(3).) In addition, section 285 enumerates affirmative acts by which a beneficiary may demonstrate acceptance, as discussed below. If *Meilink* prevents a beneficiary from accepting a future interest, then the enumerated acts would be meaningless as to future estates. *Meilink*'s conclusion that acceptance cannot occur until an interest vests is thus inconsistent with the Probate Code.

In *In Re Kolb* (9th Cir. 2003) 326 F.3d 1030, 1036 (*Kolb*), the Ninth Circuit Court of Appeals questioned *Meilink*'s continuing viability: "We believe that *Meilink* is best interpreted as a pre-Code discussion of acceptance and disclaimer, now superseded by the enactments of the California [L]egislature." We agree. Gordon was capable of accepting her beneficial interest in the WPB Trust during the lives of the settlors even though that interest was contingent on the settlors' deaths.

### 3. *Gordon's disclaimer was timely.*

To be effective, a disclaimer must be "filed within a reasonable time after the person able to disclaim acquires knowledge of the interest." (§ 279, subd. (a).) In the case of a future estate, "a disclaimer is conclusively presumed to have been filed within a

6

reasonable time if it is filed within whichever of the following times occurs later:  [¶] (1) Nine months after the time the interest becomes an estate in possession.  [¶]  (2) The time specified in subdivision (b), (c), or (d), whichever is applicable."  (*Id.*, subd. (e).) Gordon's interest in the WPB Trust was a future interest because it was contingent on the deaths of Wallace and Pearl Burt.  The disclaimer was filed on April 6, 2011, within nine months of the death of Wallace Burt, the last surviving settlor.  Accordingly, the disclaimer was timely.

### 4. *Gordon did not accept her beneficial interest.*

The beneficiary of an interest "may disclaim any interest, in whole or in part, by filing a disclaimer" of that interest.  (§ 275.)  Such a disclaimer "may not be made after the beneficiary has accepted the interest sought to be disclaimed."  (§ 285, subd. (a).)

Bizek relies on section 16004 to contend that Gordon has the burden to prove transfers from the WPB Trust to the Pearl Burt Trust or from the Pearl Burt Trust to Gordon *did not* constitute acceptance of Gordon's beneficial interest in the WPB Trust. Section 16004, subdivision (c) provides that "[a] transaction between a trustee and a beneficiary . . . by which the trustee obtains an advantage from the beneficiary is presumed to be a violation of the trustee's fiduciary duties.  This presumption . . . affect[s] the burden of proof."  Bizek does not, however, have standing to invoke the section 16004 presumption because he is not a beneficiary of the WPB Trust.  The presumption applies only to transactions "between a trustee and a beneficiary."[2]

Because Bizek was not a beneficiary of the WPB Trust, Gordon did not owe him any fiduciary duty to abstain from self-dealing in the WPB Trust.  The section 16004 presumption does not apply, therefore, and we must look elsewhere to determine

---

[2] No party has identified and we have not found any case that has applied section 16004 where a creditor of the trustee or any other third party who is not a beneficiary of the trust is trying to reach trust assets.

7

which party has the burden of proving that Gordon accepted her beneficial interest in the WPB Trust before she disclaimed it.

Evidence Code section 500 places the burden of proof in any contested matter on the party who seeks relief.[3] "The burden of proof is to law what inertia is to physics – a built-in bias in favor of the status quo." (*Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, 1388, citing Evid. Code, § 500.) "That is, if you want the court to *do* something, you have to present evidence sufficient to overcome the state of affairs that would exist if the court did nothing." (*Ibid*.)

In *Conservatorship of Hume*, the conservator filed a final inventory and appraisal of the conservatorship estate, as required by section 2610. One of the conservatee's children filed objections to the inventory. The trial court placed the burden on the objector to show the inventory's appraisals were erroneous, rather than on the conservator to show they were valid. The Court of Appeal affirmed, explaining "the status quo is the conservator's duty to file an inventory. . . . The baseline, or status quo, is the fact of the filed, verified appraisals, which will be operative unless something else happens." (*Conservatorship of Hume*, *supra*, 140 Cal.App.4th at p. 1389.) The court found support for its holding in Evidence Code section 500: "It is the objector who seeks relief by trying to change the result that would normally obtain without intervention, which would be acceptance of the appraisal." (*Conservatorship of Hume*, *supra*, at p. 1390.)

We apply the same analysis to the disclaimer statutes. The status quo is the disclaimer. Once filed, the disclaimer is operative "unless something else happens," i.e., unless someone contests the disclaimer because the beneficiary has already accepted the disclaimed interest. (§ 285, subd. (a); *Conservatorship of Hume*, *supra*, 140 Cal.App.4th at p. 1389.) Likewise, the person who contests the disclaimer is the person seeking relief

---

[3] Evidence Code section 500 provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

8

within the meaning of Evidence Code section 500. Either analysis places on the person challenging the disclaimer the burden of proving that the beneficiary had already accepted the interest sought to be disclaimed.

Having determined that Gordon's contingent interest may be accepted and that Bizek has the burden of proving the disclaimer was void, we now determine whether Bizek met his evidentiary burden. He did not.

As relevant here, section 285 provides that "a beneficiary has accepted an interest" if, before the disclosure is filed, the beneficiary "accepts the interest or part thereof or benefit thereunder." (*Id.*, subd. (b)(3)[4]; *In re Estate of Sagal* (1979) 89 Cal.App.3d 1003, 1014 (*In re Sagal*).) In *In re Sagal*, the Court of Appeal held that acceptance may arise from any action that "would portend immediately tangible results which would serve the interests of the beneficiary." (*Ibid.*) We conclude that Bizek failed to meet his burden to prove that Gordon accepted her beneficial interest in the WPB Trust by her actions. The trial court's contrary finding was error.

In the absence of directly applicable California authority, both parties refer us to the opinion of the Ninth Circuit Court of Appeals in *Kolb*, *supra*, 326 F.3d 1030, which is instructive. In *Kolb*, a bankruptcy case, the father of debtor Theodore Kolb created a trust for the benefit of his wife, Theodore's mother. The trust gave the mother complete discretion to draw on the principal for living expenses. The father's will provided that upon the mother's death the remainder of the trust would go to Theodore. (*Id.*, at pp. 1033-1034.) Theodore listed his future beneficial interest in the Kolb Trust in financial statements he submitted with a loan application. The mother gave Theodore power of attorney, including signature authority over bank accounts containing Kolb

---

[4] "For the purpose of [section 285], a beneficiary has accepted an interest if any of the following occurs before a disclaimer is filed with respect to that interest: (1) [t]he beneficiary [assigns, conveys, encumbers, pledges] or [transfers the] interest[;] (2) [t]he beneficiary . . . executes a written waiver . . . of the right to disclaim the interest[;] (3) [t]he beneficiary . . . accepts the interest or part thereof or benefit thereunder[;] [or] (4) [t]he interest or part thereof is sold at a judicial sale." The parties agree the evidence frames only the issue of implied acceptance under subdivision (b)(3). (§ 285, subd. (b).)

9

Trust funds, from which Theodore wrote checks for his mother's debts and occasionally for his own. Subsequently, in anticipation of filing for bankruptcy, Theodore disclaimed his interest in the Kolb Trust. A judgment creditor challenged the disclaimer. (*Id.*, at p. 1034.)

The creditor in *Kolb* made two arguments. First, he contended that Theodore accepted his future interest in the Kolb Trust by listing the interest on a loan application without explaining its contingent nature. (*Kolb*, *supra*, 326 F.3d at p. 1040.) The Ninth Circuit Court agreed, explaining that Theodore's use of his future interest in the Kolb trust to secure a personal loan "greatly increased [Theodore's] net worth and also increased the likelihood that his loan would be approved." (*Id.*, at p. 1041) This demonstrated Theodore's acceptance of his interest in the Kolb Trust. Put another way, Theodore's use of his future interest in the trust assets as collateral for a loan "portend[ed] immediately tangible results" that served Theodore's interests. (*In re Sagal*, *supra*, 89 Cal.App.3d at p. 1014.)

The creditor also contended that, because funds from the Kolb Trust were transferred into the mother's personal accounts, Theodore's withdrawals from those accounts for his own use constituted acceptance of his interest in the Kolb Trust. (*Kolb*, *supra*, 326 F.3d at p. 1040.) The court rejected this argument, however, as "too attenuated to satisfy the definition of acceptance intended by the California [L]egislature. [Theodore's] withdrawals from [his mother]'s personal accounts were executed under his power of attorney on behalf of [his mother], and with her permission. . . . At most, Theodore exerted control over [his mother]'s lifetime interest in the proceeds of the Kolb Trust. Accordingly, . . . these withdrawals did not constitute acceptance." (*Id.*, at pp. 1039-1040.)

The Ninth Circuit Court supported its analysis with decisions from four states that have disclaimer statutes similar to California's. In each decision, a disclaimer was held to be void because, in essence, the beneficiary's use of trust assets "portend[ed] immediately tangible results" that served his/her interests (*In re Sagal*, *supra*, 89 Cal.App.3d at p. 1014). (See *Badouh v. Hale* (Tex., 2000) 22 S.W.3d 392, 396-397

10

[beneficiary who pledged expectancy in mother's home could not disclaim interest in mother's estate]; *Niklason v. Ramsey* (Va., 1987) 353 S.E.2d 783, 784 [beneficiary who entered into a contract to dispose of his mother's estate prior to executing disclaimer was not permitted to disclaim his interest in the estate]; *In re Estate of Lyng* (S.D., 2000) 608 N.W.2d 316, 320 [disclaiming beneficiary accepted payments from life insurance and annuity contracts and directed disposition of disclaimed property, thus retaining control over the property sufficiently to invalidate the purported disclaimer]; *Leipham v. Adams* (Wash., 1995) 894 P.2d 576 [widow who registered property with broker under her own social security number and used it to trade securities accepted her husband's interest in the account and could not disclaim that interest].)

Here, the trial court agreed with Bizek that Gordon's transfers demonstrated acceptance of her beneficial interest in the WPB Trust. We accept, as supported by substantial evidence, the trial court's findings that Gordon, not Pearl Burt, authorized the transfer of $72,500 from a WPB Trust account to a Pearl Burt Trust account, that Gordon transferred the ownership of the motor home from the WPB Trust to the Pearl Burt Trust and ultimately sold it, and that the $5,000 Pearl Burt withdrew from a WPB Trust account ended up in Gordon's possession. (*ASP Properties Grp. v. Fard, Inc.*, *supra*, 133 Cal.App.4th at p. 1266.) When the proper burden of proof is applied, however, the evidence does not support the trial court's findings that these and other undisputed actions by Gordon demonstrated acceptance of her beneficial interest in the WPB Trust.

### 5. *Gordon's use of WPB Trust funds to pay Pearl Burt's expenses*

The trial court found that "[b]ecause Gordon was the sole beneficiary of the Pearl Burt Trust she benefited herself from using funds from the Wallace and Pearl Burt Trust to pay Pearl Burt's expenses." This conclusion contains two errors. The first is based on the trial court's failure to apply the proper burden of proof. Although Gordon undoubtedly used funds in the Pearl Burt Trust accounts to pay Pearl's expenses, Bizek failed to prove that the funds Gordon used for that purpose were WPB Trust funds. The

11

trial court apparently assumed that, because funds from both trusts were commingled in Pearl Burt Trust accounts, Gordon had the burden of proving that the funds she used to pay Pearl Burt's expenses were *not* WPB Trust funds. That burden of proof would be proper if Bizek were a beneficiary of the WPB Trust challenging Gordon's management of it. Gordon would then have the burden of proving, under section 16004, that she had *not* used WPB Trust funds to pay Pearl Burt's expenses and had not violated her fiduciary duty to the WPB Trust or Bizek. (*Id.*, subd. (c).) But Bizek is not a beneficiary of the WPB Trust and Gordon had no fiduciary duty to him. Bizek lacks standing to invoke the section 16004 presumption and thus has the burden of proving that Gordon *did* use WPB Trust funds to pay Pearl Burt's expenses. (Evid. Code, § 500.) Because cash is fungible, the only way Bizek could prove that WPB Trust funds, rather than Pearl Burt Trust funds, were used to pay Pearl Burt's expenses would be to show that the Pearl Burt Trust accounts contained only WPB Trust funds. The evidence in the record does not support this conclusion. Accordingly, Bizek failed to prove that Gordon accepted her interest in the WPB Trust by using WPB Trust funds to pay Pearl Burt's expenses.

The trial court also erred in finding that Gordon was the sole beneficiary of the Pearl Burt Trust and thus stood to benefit from using WPB Trust funds to pay Pearl's expenses. The evidence showed that Pearl, not Gordon, was the exclusive beneficiary of the Pearl Burt Trust during Pearl's lifetime. Gordon only became a beneficiary of the Pearl Burt Trust upon Pearl's death. All of the challenged transfers from WPB Trust accounts to Pearl Burt Trust accounts were made during Pearl's lifetime. Accordingly, if the transfers portended immediately tangible benefits to anyone, they benefited Pearl, not Gordon. Even assuming that Gordon expected to reap the benefit of the transfers after Pearl's death, when she would become the beneficiary of the Pearl Burt Trust, that expectation was contingent on two occurrences: (1) that Gordon survived Pearl and (2) that funds remained in the Pearl Burt Trust at the time of Pearl's death. Accordingly, even if Gordon benefited from using WPB Trust funds to pay Pearl Burt's expenses, the benefit to Gordon was attenuated, even speculative; it did not portend immediately

12

tangible benefits to Gordon and thus did not give rise to Gordon's acceptance of her beneficial interest in the WPB Trust.

### 6. Larsen's loss of control

The trial court also found that, "[o]nce the funds came to rest within the Pearl Burt trust, Larsen lost all control of the funds as cotrustee of the Wallace and Pearl Burt trust." This legal conclusion is incorrect. Gordon's transfer of funds from the WPB Trust to the Pearl Burt Trust did not divest Larsen of all control over those funds. As a cotrustee and a future contingent beneficiary of the WPB Trust, Larsen was empowered to demand an accounting of the WPB Trust from Gordon and could sue Gordon for malfeasance in connection with the WPB Trust.[5] Larsen's failure to exercise these powers does not signify that Gordon's fund transfers deprived her of them.

Even if Larsen did lose control over WPB Trust funds that were transferred to Pearl Burt Trust accounts, the benefit to Gordon was not direct, but attenuated. Unlike Theodore Kolb, who immediately and tangibly benefitted from listing his future beneficial interest in his mother's trust on a loan application, thus accepting his beneficial interest in the Kolb Trust, Gordon's "benefit" from Larsen's diminished control over the WPB Trust assets is too tangential and speculative to constitute acceptance by Gordon of her beneficial interest.

### 7. Gordon's receipt of WPB Trust funds

Finally, the trial court's finding that Gordon benefited "by receiving Wallace Burt [Trust] funds when they were dispersed to Gordon from the Pearl Burt Trust" is unsupported by the evidence once the correct burden of proof is applied. The trial court again apparently applied the section 16004 presumption and found that, because funds from both trusts were commingled in Pearl Burt Trust accounts, and Gordon transferred funds from those accounts to her personal accounts, Gordon had the burden to prove that the funds in her personal accounts did not come from the WPB

---

[5] Larsen also had at her disposal a petition to remove Gordon as cotrustee, which she exercised.

13

Trust. As explained above, however, the section 16004 presumption does not apply because Gordon had no fiduciary duty to Bizek. Bizek thus had the burden to prove the origin of the funds deposited in Gordon's accounts. He did not meet that burden.

Ms. Aspelin's evidence showed only that funds were transferred from a WPB Trust account of which Gordon was a trustee into a Pearl Burt Trust account of which Gordon was a trustee, that *some* funds were then transferred into other Pearl Burt Trust accounts of which Gordon was a trustee, and, finally, that *some* funds were transferred from those Pearl Burt Trust accounts to Gordon's personal accounts. Ms. Aspelin assumed that the funds that ended up in Gordon's accounts were WPB Trust funds, and the trial court accepted her conclusion. The evidence does not support that inference, however, because cash is fungible. Without the benefit of the section 16004 presumption, Ms. Aspelin's attempt at tracing is not sufficient to demonstrate that Gordon deposited WPB Trust funds into her own accounts and therefore accepted her beneficial interest in the WPB Trust.

Gordon's conduct is akin to that of Theodore Kolb, who, with his power of attorney, used funds in his mother's personal account that contained Kolb Trust funds to pay his own debts. The Ninth Circuit Court explained that in so doing "Theodore did not exercise direct control over the Kolb Trust for his own benefit. . . . At most, Theodore exerted control over [*his mother's*] lifetime interest . . . in the Kolb Trust." (*Kolb*, 326 F.3d at pp. 1039-1040, italics added.) Likewise, without the benefit of the section 16004 presumption, to which he is not entitled, Bizek fails to show the funds Gordon received in her own accounts were WPB Trust funds the receipt of which demonstrated acceptance of her beneficial interest in the WPB Trust. At most, Gordon, like Theodore Kolb, exerted control over *Pearl's* lifetime interest in the assets of the WPB Trust.

DISPOSITION

We reverse and remand with instructions to the trial court to enter a new judgment granting Vance's petition for instructions and denying Bizek's petition for declaratory relief. We vacate the trial court's order issued on April 6, 2011, which

14

grants Bizek's petition to enforce money judgment.  Appellant is awarded costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


O'DONNELL, J.[*]


We concur:


GILBERT, P. J.


YEGAN, J.

---

(Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

15

Jac A. Crawford, Judge

Superior Court County of San Luis Obispo

_____

Neil S. Tardiff and Shea S. Murphy, for Plaintiff and Appellant.

Aspelin & Bridgman LLP, John H. Aspelin for Defendant and Respondent.